FILED
2019 Aug-12  PM 05:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| KAYLAN MORRIS, on behalf of herself and all others similarly situated | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Civil Action No. 02:19-cv-00650-GMB |
| WALMART INC. f/k/a WAL-MART STORES, INC., | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

COMES NOW the Plaintiff Kaylan Morris ("Morris"), by and through her attorneys, and opposes Defendant Walmart, Inc.'s ("Walmart") Motion to Dismiss ("Motion").

## I.    INTRODUCTION

Morris is a consumer who frequents Walmart stores and has, in the past, purchased pediatric shakes sold by Walmart under the label "Parent's Choice Pediatric Shake."  She bought these shakes for her son to help supplement his diet and based upon the promises Walmart made on the Shakes' label.  Morris opted to supplement her son's diet with Walmart's Shakes after reading that the Shakes were "Naturally Flavored," provided "A Balanced Nutrition to Help Kids

Thrive," contained "No Synthetic Colors, Flavors or Sweeteners," and were "Nutrition to help kids grow."  Morris alleges the Shakes were none of these.

Walmart's Shakes' labels are misleading in several ways.  The Shakes were not as advertised and contrary to their express labelling, contained synthetic and unnatural ingredients including colors, flavors, and sweeteners.  Further, they failed to contain the nutrients Morris's son needed and instead contained significant sweeteners and sugars, some of which are not natural and are synthetic.  The Shakes amount to nothing more than sweet, sugary, high-calorie beverages which provide little to no nutrition.

## II.    STANDARD OF REVIEW

A complaint must include "enough factual matter (taken as true) to suggest" that the plaintiff will be able to meet the required elements of the given legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007).  To survive a motion to dismiss, a complaint is adequate if it identifies enough "facts that are suggestive enough to render the [legal elements] plausible." *Id.*  Rule 8 "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.*; *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a complaint may proceed even if it appears "that a recovery is very remote and

2

unlikely"). "[A] complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 548.

## III.   ARGUMENT

Walmart's Motion seeks to dismiss each of Morris's claims by arguing 1) nothing on the label of the Shakes is a "written warranty" so the Magnuson-Moss Warranty Act ("MMWA") claim fails, 2) the false and deceptive labelling of the Shakes as being "Naturally Flavored" and having no synthetic sweeteners are preempted, thus no state claims survive, 3) Morris fails to meet the pleading standard for alleging that the Shakes are not "Balanced Nutrition to Help Kids Thrive" or "Nutrition to Help Kids Grow," and 4) Morris cannot plead a violation of the Alabama Deceptive Trade Practices Act ("ADTPA") in the alternative under Rule 8.

Morris brings the following claims in her Complaint: 1) Unjust Enrichment, 2) violation of the MMWA, 3) Breach of Express Warranty, 4) Breach of Implied Warranty, and 5) violation of the ADTPA.  Importantly, Walmart directly attacks only Morris's MMWA claim and her violation of the ADTPA claim.  Although not expressly stated in the Motion, Walmart relies solely on preemption for dismissal of each of the other claims.  As shown below, each claim survives the Motion.

## A. The Magnuson Moss Warranty Act Claim Passes Muster.

The purpose of the MMWA is "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." *Cunningham v. Fleetwood Homes of Ga.*, 253 F.3d 611, 617 (11th Cir. 2001) (quoting 15 U.S.C. § 2302 (a)).  In contradiction to the MMWA's consumer protection purpose, Walmart uses the MMWA as a sword against Morris.  Indeed, Walmart asks this Court to stretch its interpretation of the MMWA to protect Walmart's intentional and deceptive written warranties.  Walmart does not argue that Morris's breach of implied warranty or breach of express warranty fails under any state law.  It says instead that there is no warranty at all.

Walmart's sole argument for dismissing the MMWA claim is that because Walmart was strategic in not expressly identifying a specified time as to each written warranty, this Court must dismiss Morris's MMWA claim.  Morris's MMWA claim survives because 1) implied warranties are actionable under the MMWA, 2) Walmart issued a guarantee which is actionable under the MMWA, and 3) Walmart's written warranties are limited to a specified time period.  Thus, a breach of the MMWA has occurred under each of the three ways above and a breach of any of the three above is a breach.

### i. Breach of Implied Warranty is Actionable under the MMWA.

Morris's claims for violation of the MMWA rise or fall with her state-law warranty claims and do not provide an independent cause of action for state law claims. *Fedrick v. Mercedes Benz USA, LLC*, 366 F. Supp. 2d 1190, 1200 n. 14 (N.D. Ga. 2005). An MMWA claim depends on a state law claim for breach of warranty. *See, e.g., Burns v. Winnebago Industries, Inc*., No. 8:11-cv-354-T-24-TBM, 2012 U.S. Dist. LEXIS 6472, 2012 WL 171088, at *4 (M.D. Fla. Jan. 20, 2012) (collecting cases).

Walmart conveniently glazes over the fact that Morris may bring an MMWA claim for breach of an implied warranty. An "'implied warranty' means an implied warranty arising under State law…in connection with the sale by a supplier of a consumer product." 15 U.S.C. 2301(7). The MMWA provides for a civil action by consumers for damages for "the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a[n] implied warranty." 15 U.S.C. 2310(d)(1).

Morris alleges that Walmart breached its implied warranty of merchantability. Doc. 1 at ¶¶ 106 – 116. The implied warranty of merchantability guarantees that a product is "fit for the ordinary purposes for which such goods are used." Ala. Code § 7-2-314. Section 2-314 of the Uniform Commercial Code provides that, "[u]nless excluded or modified, a warranty that the goods shall be merchantable is implied in

5

a contract for their sale if the seller is a merchant with respect to goods of that kind."

To be "merchantable," goods must, inter alia, "pass without objection in the trade

under the contract description," be "adequately contained, packaged, and labeled as

the agreement may require," and "conform to the promise or affirmations of fact

made on the container or label." *Id.* at § 7-2-314(2). Morris plead each required

element, s*ee* Doc. 1 at ¶¶ 106 – 116, and Walmart does not contest that. *See* Doc.

11. Accordingly, Morris plead a valid breach of implied warranty claim.

Walmart does not raise any relevant defenses that directly concern Morris's

claim for breach of implied warranty. Indeed, Walmart addresses Morris's implied

warranty claims in only two places: 1) in the introductory paragraph where it

recognizes Morris asserts a breach of implied warranty claim and 2) under the

ADTPA section where it again acknowledges that Morris asserts a breach of implied

warranty claim. Nowhere does Walmart specifically set forth a single argument that

Morris's breach of implied warranty claim fails. Accordingly, because Morris's

breach of implied warranty claim survives, her MMWA claim premised on a breach

of implied warranty also survives.

### ii. A Guarantee, as Provided by Walmart, is also Actionable under the MMWA.

Walmart fails to acknowledge that that the Shakes contain a guarantee. *See*

Doc. 1 at ¶¶ 16 & 83. Walmart's guarantee provides that "You'll love this Parent's

Choice product. In fact, we guarantee it. If you (or your baby) aren't completely

happy, please return the product to us and we'll replace it or refund your money."
Doc. 1 at ¶ 16 (referencing https://www.walmart.com/ip/Parent-s-Choice-Pediatric-Shake-Vanilla-8-oz-6-Count/38763845 which provides a picture of the guarantee on the packaging.).

Utilizing the same Federal Trade Commission ("FTC") interpretation of the MMWA as Walmart, Morris notes that the Code of Federal Regulations § 700.3(a) alternatively defines "written warranty" as "*a written undertaking of remedial action within the meaning of section…15 U.S.C. 2301(6)(B).*"  16 C.F.R. § 700.3(a) (emphasis added).  There is no requirement under subsection (B) that requires a "specified time period" to be asserted.  *See id*.  Thus, under 15 U.S.C. Section 2301(6)(B), an alternative definition of "written warranty" is "any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action…"  15 U.S.C. § 2301(6)(B); *see also Hairston v. South Beach Bev. Co.*, CV 12-1429-JFW (DTBx) 2012 U.S. Dist. LEXIS 74279 at *19 (C.D. Cal. May 18, 2012) (acknowledging that 15 U.S.C. § 2301(6)(B) of the MMWA provides for an actionable claim on a guarantee).  Walmart's guarantee does just that, promises a "refund" and "other remedial action [replacement]."  Thus, the warranties that Morris alleges are breached meet the definition of "written warranty" under the MMWA.  Accordingly, Morris's MMWA claim for breach of written warranty survives the Motion.

7

### iii.   Walmart's Written Warranty is for a Specified Time Period.

In addition to the above points, there are other reasons why it is unavailing for Walmart to contend that a lack of a "specified time period" for the written warranties requires dismissal of the MMWA claim.  Although Morris admits that one definition of "written warranty" under the MMWA requires that a "specified time period" be present, Walmart's written warranties are for a time certain.  Firstly, each Shake has a stamped expiration date.  Inherently, any warranties provided for on the Shakes' packaging are valid through that expiration date thereby providing a specified period of time.  Secondly, if the expiration date is not sufficient, the character of the warranties provided concern children who are only children for a finite period of time.

As acknowledged in *Hairston*, consumer products designed to be used repeatedly over time may implicitly contain a temporal element.  2012 WL 1893818 at *6. Walmart indisputably markets the Shakes to encourage a pattern of consumption throughout childhood: "Balanced Nutrition to Help Kids Thrive," "Nutrition to help kids grow," and "Use as a part of a balanced diet."   At the pleadings stage, Morris has met the required showing that Walmart's warranties are for a specific period of time; they either exist through the termination of expiration date, through one's finite childhood, or are inherently limited in time because of the repeated use of the Shakes.

In *Bohlke v. Shearer's Foods, LLC*, the plaintiff brought a breach of express warranty claim and an MMWA claim asserting that the MMWA was violated because the consumer product at issue was labelled as "All Natural" and "No Artificial Ingredients," but actually contained, among other ingredients, Maltodextrin.  2015 U.S. Dist. LEXIS 6054 at **1-4 (S.D. Fla. January 20, 2015). The defendant in *Bohlke* argued that because there was no "specified period of time," the MMWA claim must be dismissed.  2015 U.S. Dist. LEXIS 6054 at *32.  The *Bohlke* Court disagreed, holding that because the plaintiff's breach of express warranty claim under state law could proceed, the MMWA could also proceed.  *Id.* Because the warranties challenged by Morris are for specified periods of time, her MMWA claim survives the Motion.

### B. The FDCA Does Not Preempt Morris's Claims.

Walmart's preemption defense has no leg on which to stand.  Federal food labelling law's preemptive effect is quite limited, and Morris's misbranding suit lies outside that narrow ambit.   Walmart's argument to the contrary rests on a misunderstanding of federal food labelling law and a mischaracterization of Morris's factual allegations.

Congress, by adopting a limited express preemption provision which identifies select federal requirements as having preemptive effect, took care to preserve certain state authority over food labelling.  Most critically, the federal duty

not to sell "misbranded" food, defined in part as food with false or misleading labelling, is not a federal requirement identified by Congress as having preemptive effect. *See* 21 U.S.C. § 343-1(a) (excluding from its express preemption a claim for "False or Misleading Label" under 21 U.S.C. § 343(a)."). This means that federal food labeling laws do not bar a state law claim that a food label is false or misleading as a whole, or in a respect not specifically required or authorized by a federal statute or regulation with preemptive effect. Furthermore, federal law only bars state law requirements that are not identical to federal law requirements explicitly identified in an express preemption clause.

Walmart can only show that Morris's state law suit is preempted if it establishes two things: 1) that *each* of Morris's claims involves an aspect of food labeling specifically authorized or required by a federal statute or regulation with preemptive effect and 2) that Walmart is in compliance with *each* of these federal requirements. *See* 21 U.S.C. § 343 & 343-1. Wal-Mart, however, cannot make these showings as no federal statutory or regulatory provision specifically requires or authorizes Walmart to advertise the Shakes by calling them "Naturally Flavored," "Balanced Nutrition to Help Kids Thrive," "No Synthetic Color, Flavor or Sweeteners," or "Nutrition to Help Kids Thrive."

### i. Preemption is an Affirmative Defense and Does Not Support the Motion.

"The existence of an affirmative defense such as preemption will not usually support a motion to dismiss." *See Quiller v. Barclays American/Credit*., 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd*, 764 F.2d 1400 (11th Cir. 1985) (en banc). *Reynolds v. Wal-Mart Stores, Inc.*, No. 4:14cv381-MW/CAS, 2015 U.S. Dist. LEXIS 53405, at *6 (N.D. Fla. Apr. 23, 2015).  Given the facts and law cited below, Walmart is entitled to assert a preemption defense but does not and cannot show, at this stage, that it is certain to prevail on the preemption defense.  Thus, the Motion should be denied.  To be sure, it is Walmart's burden to prove its preemption affirmative defense.  *Crenshaw v. City of Wetumpka*, 2:15-CV-413-WKW, 2017 U.S. Dist. LEXIS 163940 at * 12 (M.D. Ala. September 29, 2017) (finding that defendant "bears the burden of proof on its affirmative defense.").  Because it has failed to meet that burden, these aspects of Walmart's labelling are actionable under state law.

### ii. The NLEA's Express Preemption Provision is Narrow in Scope and False and Misleading Misbranding Suits are Not Preempted.

In 1990, Congress amended the Federal Food, Drug, and Cosmetic Act ("FDCA"), ch. 675, 52 Stat. 1040 (codified as amended at 21 U.S.C. §§ 301 *et seq.),* to address nutrition labeling for most food products. National Labeling and Education Act of 1990 ("NLEA"), Pub L. No. 101-535, 104 Stat. 2353.  The FDCA

bans the introduction into or receipt in interstate commerce of "misbranded" foods. 21 U.S.C. § 331(a) and (c); *see also* § 321(f) (defining food to include any "article used for food or drink for man").  Among other prohibitions, a food is misbranded if "its labeling is false or misleading in any particular," § 343(a)(1).

The Federal Trade Commission and the Food and Drug Administration share enforcement authority over deceptive food labeling, advertising, and promotion.  *See* 15 U.S.C. §§ 45(a)(2), 52(a).  Under the FDCA, primary responsibility for honest and accurate labeling rests with manufacturers, not the FDA. *Cf Wyeth* v. *Levine,* 555 U.S. 555, 579 (2009) (addressing drug labeling under the FDCA).  If it concludes that a food is misbranded, the FDA may bring an enforcement action against a manufacturer, but the FDA's failure to initiate an enforcement action cannot be construed as implicit approval.  *Altria Grp., Inc.* v. *Good,* 555 U.S. 70, 89 (2008) ("agency nonenforcement of a federal statute is not the same as a policy of approval")).

Preemption is ultimately a question of Congress's intent.  *Levine,* 555 U.S. at 565.  In express preemption cases like this, a court's analysis must "start with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc.* v. *Lohr,* 518 U.S. 470, 485 (1996) (internal quotation marks omitted).  That presumption is particularly strong here given the long history of state

regulatory authority over food products, *Plumley* v. *Massachusetts,* 155 U.S. 461, 472 (1894) (recognizing state authority to regulate "fraud and deception in the sale of food products"); and given that preemption here would leave consumers of fraudulent and deceptive food products without a remedy, *see Bruesewitz* v. *Wyeth LLC,* 131 S. Ct. 1068, 1080 (2011) (recognizing the Court's longstanding doubt that Congress would quietly eliminate state remedies without providing a federal substitute).

Congress addressed the precise scope of federal and state authority through an express preemption clause that identifies twelve specific areas in which federal requirements preempt non identical state law requirements.  21 U.S.C. § 343-1(a).[1] The limited reach of this preemption clause shows that Congress took care to preserve certain state tort suits.[2]  Most importantly for Morris's claims is that Congress did not expressly preempt a misbranding suit alleging a "False or Misleading Label."  *See* 21 U.S.C. § 343-1(a) (excluding from its express preemption a claim for "False or Misleading Label" under 21 U.S.C. § 343(a).").

---

[1] Walmart cites to this same statute but miscites it as "21 U.S.C. § 343-1(3)."  *See* Doc. 11 at 5.

[2] This express preemption provision was added to the NLEA to encourage the food industry to back the bill. 136 Cong. Rec. H12951-02, H12954, 1990 WL 290331 (Oct. 26, 1990) (Rep. Waxman). Its limited scope reflected congressional "sensitivity] to the regulatory roles played by the States." 136 Cong. Rec. SI6607-02, SI6609, 1990 WL 206648 (Oct. 24, 1990) (Sen. Mitchell). As Senator Mitchell explained: The preemption clause was "refined to provide national uniformity where it is most necessary, while otherwise preserving State regulatory authority where it is appropriate." *Id.* at S16609.

There is no implied preemption as Congress clearly and manifestly expressed an intention that the NLEA would not preempt state law beyond the law's express terms:

> The Nutrition Labeling and Education Act of 1990 shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A [21 U.S.C. § 343-l(a)] of the Federal Food, Drug, and Cosmetic Act.

Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364 (codified as amended at 21 U.S.C. § 304-1 note).   In other words, "[t]he NLEA explicitly forecloses the possibility that state law would be impliedly preempted." *N.Y. State Rest. Ass'n* v. *N.Y. City Bd. of Health,* 509 F. Supp. 2d 351, 355 (S.D.N.Y 2007).  As the FDA has explained: "If there is no applicable Federal requirement that has been given preemptive status by Congress, there is no competing claim of jurisdiction, and, therefore, no basis under the 1990 amendments for Federal preemption." 56 Fed. Reg. 60528, 60530 (Nov. 27, 1991).

The federal requirement that forbids manufacturers from selling "misbranded" food, which is defined in part as food with false or misleading labeling in any particular, 21 U.S.C. § 343(a)(1), is not among those federal requirements identified by Congress as having preemptive effect.  *See id.* at § 343-1(a).  This means that the NLEA does not bar a state law claim that the Shakes' label is false or misleading.

Finally, the NLEA, by its terms, preserves state laws that impose requirements "identical" to the specified federal requirements. *Id.* State law may hold a manufacturer that does not comply with federal requirements accountable under an identical state requirement. *See id.* As Walmart has failed to show that Morris's claims are anything other than state law claims for false or misleading labels, which are not preempted, its Motion should be denied.

### iii. Walmart's Motion Improperly Stretches the FDA's Guidance on "Naturally Flavored."[3]

Walmart cites *Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097 (N.D. Cal. 2012) for the proposition that under 21 C.F.R. § 101.22(i), Walmart can intentionally and conspicuously advertise it Shakes as "Naturally Flavored" despite them being flavored by unnatural or synthetic ingredients. Doc. 11 at 6. However, Walmart fails to quote an important acknowledgement in *Lam* which states that one can claim a food is "Naturally Flavored" only "[s]o long as that product 'contains natural flavor' which is 'derived from' the 'characterizing food ingredient.'" *Lam,* 859 F. Supp. 2d at 1103. Morris alleges that the Shakes are not "Naturally Flavored" because they contain unnatural and synthetic ingredients. Doc. 1 at ¶ 17.

---

[3] Importantly, under preemption, Walmart attacks Morris's claims on only two statements: that the Shakes are "Naturally Flavored" and "No synthetic color, flavor, or sweeteners." Thus, Walmart has not moved to dismiss for preemption on the other statements she alleges are also misleading: "Balanced Nutrition to Help Kids Thrive," "Nutrition to help kids grow," "Parent's Choice Vanilla Pediatric Shake is designed to nourish and support baby's development and growth," or "Our shakes also contain additional nutritional benefits like antioxidants, probiotics, and no synthetic color, flavor, or sweeteners."

Misapprehending the full set of allegations, Walmart's opposition is based solely on a single ingredient – Maltodextrin – which it argues is not "listed" in a non-comprehensive listing of "artificial flavors." *See* 21 C.F.R. § 101.22(a)(1) (stating that "artificial flavor" "includes," but does not create exhaustive listing, substances §§ 172.515(b) and 182.60). Thus, whether or not Maltodextrin is unnatural or natural is a question of fact not appropriately determined under this Motion.

Walmart provides no evidence nor argument concerning the dozens of other ingredients Morris challenges as synthetic and artificial in her Complaint. Accordingly, at the pleading stage and prior to discovery on the ingredients, the Motion is due to be denied because one cannot determine on the pleadings whether the Shakes contain only "natural flavor" which is "derived from the characterizing food ingredient [Vanilla or Chocolate]." The allegations, taken as true, distinguish the instate case from *Lam*.

### iv. Walmart's Argument that the FDCA Preempts a Claim that the Shakes' Labelling Concerning Flavor, Color, and Sweeteners is Preempted is Not Supported.

Walmart cites no case law supporting its position that claims of false or deceptive labelling of flavor, color, or sweeteners is preempted. As shown above, Morris is entitled to pursue a misbranding false and misleading labelling claim as it is not preempted. Morris's claims that the Shakes are misbranded because they wrongly state they contain "No Synthetic Color, Flavor, or Sweeteners" is not

preempted because no statute, regulation, or case law supports the preemption asserted.

Maltodextrin, an ingredient of the Shakes, at least at the pleadings stage, must be taken as synthetic. The United States Department of Agriculture ("USDA"), finds that an ingredient is synthetic if it is:

> A substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes.

21 C.F.R. § 501.22. Maltodextrin is a saccharide polymer that is added to food as either a white powder or a concentrated solution to act as a thickening agent. 21 C.F.R. § 184.1444(a). It is commercially manufactured through the partial hydrolysis of corn starch, potato starch, or rice starch with certain acids and enzymes. *Id*. Merriam-Webster's Dictionary defines "natural" as "existing or produced by nature: not artificial." "The FDA has considered the term 'natural' to mean that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in that food." www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/labelingnutrition/ucm456090.htm+&cd=3&hl=en&ct=clnk&gl=us. Morris makes these allegations in her Complaint and Walmart does not controvert them. *See* Doc.

1 at ¶¶ 21-33.  Thus, Walmart rests its argument solely on the question of whether Maltodextrin is "sweet."

### 1. Whether Maltodextrin is Sweet or Nonsweet is a Question of Fact.

Morris expressly alleges that Maltodextrin is sweet because it contains sugars, similar to corn syrup.  Doc. 1 at ¶ 30.  "Maltodextrins are starch hydrolysates that have a 'dextrose equivalence' of less than 20."  *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1344 (Fed. Ct. App. 1999) (acknowledging that Maltodextrin, depending upon how processed it is, has a range of sweetness). Walmart does not argue that Maltodextrin is not "sweet;" instead, it has cited an obscure Regulation that says Maltodextrin is "nonsweet" and thus Morris's claims are preempted.  *See* Doc. 11 at 2.

Morris's allegations that Maltodextrin is in fact sweet must be taken as true at the pleadings stage.  Morris expressly alleges that Maltodextrin is a synthetic sweetener.  Doc. 1 at ¶¶ 28-31.  Walmart's citation to 21 C.F.R. 184.1444(a) for the proposition that this Regulation provides that Maltodextrin is "nonsweet" inserts a question of fact.  Walmart's contention is misplaced because this Regulation only provides that Maltodextrin is "Generally Recognized as Safe for Human Consumption."  *Id*.  It does nothing more and certainly does not provide guidance on labelling of food products as having "No Synthetic Color, Flavor or Sweeteners." Walmart has not shown that Morris's well plead Complaint fails to state a claim;

rather, Walmart argues that Maltodextrin is nonsweet and thus it has raised a question of fact.  Accordingly, the Motion is due to be denied.

### C. Morris's Claims that the Shakes are Deceptive and Misleading Because it is False that They are "Balanced Nutrition to Help Kids Thrive" and "Nutrition to Help Kids Grow" Survive the Motion.

Under Rule 12(b)(6), a Motion to Dismiss should be granted *only* if Plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face."  Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 540, 570 (2007). "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.,* 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly,* 550 U.S. at 556).  Further, the Supreme Court in *Twombly* declared that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged". *Tombly*, 550 U.S. at 556.  While "[s]pecific facts are not necessary," the complaint should "give the defendant fair notice of what the… claim is and the grounds upon which it rests."  *Id.* at 570.

Walmart argues that Morris did not plausibly allege that the nutritional related claims were false and/or deceptive; this is simply not true.  *See* Doc. 11 at 8-9. Following *Twombly,* Morris's Complaint particularly states facts that support each element of her claims and thus withstands the Motion.  Morris demonstrates the

existence of a live controversy and establishes that by Walmart's inclusion of "Naturally Flavored," "Balanced Nutrition to Help Kids Thrive," "No Synthetic Color, Flavor or Sweeteners," and "Nutrition to Help Kids Grow" on its Shakes, the statements were deceptive, false and misleading. Doc. 1 at ¶ 13.  The Complaint gave Walmart fair notice of Morris's claims and the grounds for which she was seeking legal action.

In *Muir v. Playtex Prods., LLC*, plaintiff alleged that Playtex Products sold him a diaper disposal product, falsely claiming on its packaging that it had been "Proven #1 in odor Control."  983 F. Supp. 2d 980, 983 (N.D. Ill. 2013).  Plaintiff brought suit against defendant for the economic injury he sustained as a result of Playtex's deception.  *Id.*  Playtex moved to dismiss the suit for lack of standing and under Rule 12(b)(6) for failure to state a claim.  *Id*.  The Northern District of Illinois denied Playtex's motion determining that, under the facts plead, plaintiff was damaged because the Diaper Genie II Elite product was actually worth less than what it would have been had it actually be proven superior to its competitors.  *Id*. At 990. Most importantly, the Court determined that the plaintiff had sufficiently plead that his financial injury was caused by the defendant's deceptive statements.  *Muir v. Playtex Prods., LLC* at 991. "At the pleading stage … all that is necessary to allege proximate causation is to assert, as [the plaintiff] does that after the alleged misrepresentations were made, the wrongful charges were paid."  *Id.*

Similar to the false representations made by Playtex, Walmart's promises that the Shakes contain "Balanced Nutrition to Help Kids Thrive," and "Nutrition to Help Kids Grow" are false and misleading. Walmart made millions of dollars by deceiving reasonable consumers into believing that the Shakes nourish and support babies' development and that the ingredients contain many nutritional benefits. The Shakes, however, are not as nutritious as Walmart represents. Doc. 1 at ¶ 68. The Shakes contain synthetic ingredients such as maltodextrin. Maltodextrin is a synthetic ingredient and being that it is commercially manufactured by a complex chemical process; it is not natural. Doc. 1 at ¶¶ 23-32.

Maltodextrin is a sweetener that contains sugar, similar to corn syrup, and Walmart adds the ingredient for its sweetness. Doc. 1 at ¶ 30-31. Maltodextrin does not add any nutritional value to the Shakes. Walmart's claims are untrue, misleading and likely to deceive reasonable consumers, such as Morris. Again, Walmart's argument here is premised on a question of fact which is not ripe for decision on this Motion. Walmart's deception deprived Morris of her benefit of the bargain because it caused her to pay more than the actual value of the product. Unfortunately for consumers, Walmart continues to market and sell the Shakes in grocery stores, food chains, convenience stores, etc.

As the Complaint states, "Plaintiff would not have purchased the Shakes had she known that they contained synthetic and artificial ingredients." Doc. 1 at ¶ 49.

Morris, concerned about her son's diet and nutrition, bought Defendant's product to supplement her son's picky food choices. Doc. 1 at ¶ 47. Plaintiff did not intend to give her child Shakes containing significant synthetic sweeteners and sugars. Doc. 1 at ¶¶ 47-49. These facts allow the Court to draw the reasonable inference that Walmart is liable for the misconduct alleged.

Morris also alleges that Walmart knew or had reason to know of the false representations it was making. Doc. 1 at ¶¶ 17-18. Walmart knew that the Shakes contained unnatural and synthetic ingredients, including maltodextrin, yet stated otherwise. Doc. 1 at ¶ 20. After reading the Complaint, this Court can find a reasonable inference that Plaintiff is entitled to relief. Defendants' Shakes include language that is false and/or deceptive and Plaintiff relied on that language when she purchased the product. Plaintiff was not able to test the contents of the Shake prior to her purchase and consequently was required to rely on the representations and appearance of Defendant's product. Doc. 1 at ¶¶ 37-38. Walmart has done nothing more than argue that Morris's allegations are untrue and that its version of the facts is true. This is not complicated, Morris has met the pleading standards and Walmart has moved to dismiss arguing that her allegations are untrue.

The Court must construe the Complaint liberally, assuming all facts as true, and drawing all reasonable inferences in favor of Morris. The Complaint should not be dismissed just because Walmart has raised a question as to whether or not Morris

will prove all of her allegations. She has given Walmart sufficient facts to put it on notice of her claims and discovery will reveal evidence confirming Walmart's liability. Morris's Complaint sufficiently presented her claims for false and/or deceptive violations and nothing more is required at this stage of the proceeding. The facts must be accepted as true and Walmart's Motion should be denied.

### D. Morris's Alabama Deceptive Trade Practices Act ("ADTPA") Claim Survives Because the Federal Rules of Civil Procedure Permit Pleading in the Alternative.

Morris's ADTPA claim survives the Motion because it is brought in federal district court where federal procedure controls.[4] It is uncontroverted that the Federal Rules of Civil Procedure control this action. Fed. R. Civ. P. 1. Federal Rule of Civil Procedure 8 permits parties to plead alternative, even inconsistent, theories. *Barcal v. EMD Serono, Inc.*, 2016 U.S. Dist. LEXIS 35765 at *17 (N.D. Ala. March 21, 2016) (denying a motion to dismiss an ADTPA claim on the ground that while the "ADTPA's savings clause would preclude [the plaintiff] from ultimately obtaining relief under both the ADTPA and her common law claims," she was permitted to plead both); *see also In re GM LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 405 (S.D.N.Y. 2017) (finding that "the right to plead alternative, or even inconsistent, claims is not a matter of substance; it is a quintessential matter of procedure"); *see*

---

[4] Walmart does not move to dismiss Morris's ADTPA claim for failure to substantively plead a violation of the ADTPA.

*also Glenn v. Hyundai Motor Am.*, 2016 U.S. Dist. LEXIS 181318 at \*35 (C.D. Cal. June 24, 2016) (denying a motion to dismiss on the grounds that a plaintiff cannot plead both an ADTPA claim and common law claims); *see also Collins v. Davol, Inc.*, 56 F. Supp. 3d 1222, 1227 n.2 (N.D. Ala. 2014) (acknowledging that a plaintiff may bring both an ADTPA claim and common law claims). Accordingly, under the applicable rules, Morris permissibly plead her ADTPA claim in the alternative.

Walmart acknowledges the recent trend in federal district courts to permit pleading both violation of the ADTPA and other claims, yet it torturously argues that this Court should ignore the trend and revert to an older line of cases holding the opposite. Doc. 9 at 9. Walmart's primary case in support of dismissal is *Holmes v. Behr Process Corp*. which was decided in 2015. *Id.* (citing *Holmes*, No. 2:15-CV-0454-WMA, 2015 U.S. Dist. LEXIS 1255042 (N.D. Ala. Nov. 17, 2015). The more recent 2017 case of *In re GM LLC Ignition Switch Litig.* criticized *Holmes* for its holding; *In Re GM* held that cases "permitting both claims at the pleading stage have the better of the argument." 257 F. Supp. 3d at 405.

The only case cited by Walmart that is more recent than those cited by Morris above, is *Jones v. Coty, Inc*. 363 F. Supp. 3d 1211 (S.D. Ala. 2018).[5] Walmart misapprehends *Jones*. *Jones* is distinguishable for at least five reasons: 1) plaintiffs voluntarily withdrew all claims except their ADTPA claim, 2) the withdrawal was

---

[5] The undersigned firm represented the plaintiffs in *Jones*.

done as a strategic move and only upon plaintiffs moving for class certification, 3) the plaintiffs opposed the contention there that they could not plead in the alternative, rather the plaintiffs agreed only that they could not seek redress, 4) *Jones* did not hold that plaintiffs could not plead violations of the ADTPA and other claims, 5) the language cited by Walmart is *dicta*, and 6) *Jones* is a decision at summary judgment.

*Jones* acknowledges that plaintiffs there voluntarily waived only there right to seek *redress*. Despite Walmart's attempt to conflate *redress* with *pleading*, it is not the same. It is the remedies provided by the ADTPA that are "mutually exclusive": "There is no prohibition against [a] plaintiff pleading two alternative, inconsistent and mutually exclusive claims ... [although a] plaintiff can only recover under one of the remedies." *Missildine v. City of Montgomery*, 907 F. Supp. 1501, 1505 n.3 (M.D. Ala. 1995) (citing *Ex parte King*, 591 So. 2d 464 (Ala. 1991)); *see also Cheminova Am. Corp. v. Corker*, 779 So. 2d 1175, 1183 (Ala. 2000) (noting that "the Act specifically states that consumers are not prohibited from seeking redress under the common law or under other statutes for conduct that could be redressed under the Act"); *see also Ford Motor Co. v. Sperau*, 708 So. 2d 111, 122 n. 7 (Ala. 1997) ("the remedies under the Act and those otherwise available are mutually exclusive"); *see also Hines v. Riverside Chevrolet-Olds*, 655 So. 2d 909, 917 n.2 (Ala. 1994) ("§ 8-19-15…part of the Deceptive Trade Practices Act, makes it clear that the remedies available under that Act and the remedies available under

the common law or other statutory law are 'mutually exclusive.'").  Accordingly, Morris may proceed on all her claims at this stage.

The timing of the *Jones* plaintiffs' withdrawal of other claims is important because it was made only after discovery, after their motion for class certification, and at briefing on summary judgment.  Thus, the *Jones* plaintiffs pursued their ADTPA and other claims throughout discovery, deciding to proceed only on their ADTPA at the appropriate time.  The *Jones* plaintiffs expressly contested any notion that they were not permitted to plead both violations of the ADTPA and other claims.  1:16-cv-00622-TFM at Doc. 155, 9 n. 15 (July 23, 2018).  Footnote 26 in *Jones*, cited by Walmart, is not a necessary finding for dismissal of the *Jones* plaintiffs' non ADTPA claims; indeed, footnote 26 is merely an observation that the *Jones* plaintiffs voluntarily withdrew their non ADTPA claims at the appropriate time.  *See Jones*, 363 F. Supp. 3d 1212 at n. 26.  Case law supports at the pleadings stage a denial of the Motion on this ground.

## IV.   LEAVE TO AMEND

Morris maintains, for the reasons given, that her pleading passes Rule 12(b)(6) muster.  However, should this Court decide that additional pleadings are required, Morris requests leave to amend.  "Ordinarily, a party must be given at least one opportunity to amend before the district court dismisses the complaint."  *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005).  The "one opportunity" referred

to means amendment to cure specific deficiencies. *Bryant v. Dupree*, 252 F.3d 1161, 1163-64 (11th Cir. 2001) (cited in *Corsello*, ante).

## V.    CONCLUSION

Walmart has failed to meet its burden to show that the affirmative defense of preemption precludes Morris's state law claims.  It has also interpreted the MMWA too narrowly and Morris's breach of warranty claims survive because there's an implied warranty, a guarantee, and the written warranty is time limited.  Finally, the ADTPA claim may be plead in the alternative.  Accordingly, the Motion is due to be denied.

Dated: August 12, 2019

Respectfully Submitted,

*/s Taylor C. Bartlett*
Taylor C. Bartlett
Heninger Garrison Davis, LLC
2224 First Ave North
Birmingham, AL 35203
taylor@hgdlawfirm.com

*One of the Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to all counsel of record.

*s/ Taylor C. Bartlett*
Taylor C. Bartlett

27