FILED
2020 Apr-16  PM 04:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **KAYLAN MORRIS, on behalf of herself and all others similarly situated,** | ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Case No.: 2:19-cv-650-GMB** ) |
| **WALMART INC. f/k/a WAL-MART STORES, INC.** | ) ) ) ) |
| **Defendant.** | ) ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Kaylan Morris ("Morris"), on behalf of herself and all others similarly situated, hereby opposes Defendant Walmart Inc.'s, f/k/a Wal-Mart Stores, Inc. ("Walmart") Motion to Dismiss (Dkt. No. 35).

## FACTS

Walmart sells its "Parent's Choice Pediatric Shake" ("Pediatric Shakes"). Dkt. No. 33, at ¶ 9. These Pediatric Shakes are advertised as "Naturally Flavored," "Balanced Nutrition to Help Kids Thrive," "Nutrition to help kids grow," and having "No Synthetic Color, Flavor or Sweeteners." *Id.*, at ¶¶ 2 and 12. The Pediatric Shakes come in a variety of flavors including, but not limited to, Vanilla and

1

Chocolate. The front of the vanilla flavored Pediatric Shakes packaging and its "Ingredients" are depicted below:



Figure 1                                                          Figure 2

As depicted in Figure 2, on its list of ingredients, the Vanilla Shakes do not list vanilla, vanilla beans, vanilla extract, or any other natural flavor ingredient derived from Vanilla.  Dkt. No. 33, at ¶ 43.

Another ingredient that forms the basis for Morris' claims against Walmart - Maltodextrin – is included as an ingredient.  Maltodextrin has a dextrose equivalent (DE) of less than 20, per 21 C.F.R. 184.1444.  *Id.*, at ¶ 30.  Although maltodextrins are not often used primarily for sweetening purposes, the degree of sweetness (taste intensity) generally decreases as the DE decreases.  *Id.*, at ¶¶ 32, 55-56.  In medium DE maltodextrin, the dextrose equivalent (DE) ranges from 11–20.  This type of maltodextrin is slightly sweet in taste.  Thus, depending on the DE, maltodextrin can

contribute to sweetness.

The Pediatric Shakes' Nutritional Facts section states that there are 240 calories in each bottle, consisting of "34g" of carbohydrates in each bottle. Dkt. No. 33, at ¶ 60; Dkt. No. 35-2. Each gram of carbohydrates present constitutes 4 calories. Dkt. No. 35-2. Accordingly, carbohydrates account for over half (136 of 240) of the calories present in each of the Pediatric Shakes.

Based on FDA regulations, the quantity of ingredients present in a product are supposed to be listed in descending order on the label. 21 C.F.R. § 101.4. Maltodextrin and sugar are the two most abundant ingredients on the Pediatric Shakes' ingredients list, after water. Dkt. No. 33, at ¶¶ 48-51. Maltodextrin and sugar are both carbohydrates, and there are no other significant sources of carbohydrates listed in the Nutritional Facts section. *Id.* Thus, Maltodextrin and sugar constitute the balance of these carbohydrate calories. Moreover, out of these "34g" of carbohydrates, there are "10g" of "Added Sugars, and "11g" of "Total Sugars." What remains unclear from Walmart's labels are (1) the exact amount of sugar included; and (2) whether some of the Maltodextrin present in the Pediatric Shakes was manufactured for a sweetening effect and included as part of "Total Sugar" for labelling purposes. *Id.*, at ¶ 57.

3

## ARGUMENT

### A. Morris' Claims Related To Vanilla Are Not Preempted.

Claims that a product's label violates FDA regulations are not preempted. *Ackerman v. Coca-Cola Co.*, No. CV-09-0395, 2010 U.S. Dist. LEXIS 73156, \*22, 26-27 (E.D.N.Y. July 21, 2010).  As plead in Morris' Amended Complaint, her claims related to "Naturally Flavored" are predicated upon allegations that Walmart's Vanilla Pediatric Shakes violated 21 C.F.R. § 101.22(i) because "they do not contain natural flavor derived from the characterizing ingredients of [] vanilla." Dkt. No. 33, at fn. 1.

FDA Regulation 21 C.F.R. § 101.22(i) regulates the declaration of characterizing flavors on labels. 21 C.F.R. § 101.22(i)(1) provides that a manufacturer can use a "naturally flavored" label on a product, so long as "that product contains natural flavor which is derived from the characterizing food ingredient, it will not run afoul of the regulation." *Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097, 1103 (N.D. Cal. 2012).  As illustrated in Figure 1 above, the "characterizing flavor" for Walmart's Pediatric Shakes is vanilla, and the labelling challenged by Morris relates to the Pediatric Shakes' "characterizing flavor" as vanilla. The *Lam* court recognized that this type of challenge was "expressly permitted" by FDA regulations.  859 F. Supp. 2d at 1103.  In *Lam,* "[t]he crux of the FAC is that the Fruit Snacks' labeling is deceptive because the products' ingredients,

not their flavors, are unnatural."   Here, Morris' claim centers around Walmart violating § 101.22(i) because their "Naturally Flavored" Vanilla Pediatric Shakes do not contain natural flavor derived from the characterizing ingredients of vanilla. Dkt. No. 33, at fn. 1. and ¶¶ 45-46.

Specifically, Morris alleges that she and other consumers understood that Vanilla Pediatric Shakes' front label statement of "Vanilla" being "Naturally Flavored" to mean that Walmart's Pediatric Shakes contained natural flavor derived from actual vanilla.  *Id.*, at ¶ 42.  However, two points establish that the Pediatric Shakes' characterizing flavor, vanilla, is not derived from actual vanilla.  *Id.*, at ¶¶ 33-46.  First, the Pediatric Shakes' ingredient list does not contain "vanilla, vanilla beans, vanilla extract, or any other natural flavor ingredient derived from Vanilla." *Id.*, at ¶¶ 43 (citing 21 C.F.R. §§ 169.175 to 169.178, which define these ingredients). Second, because vanilla beans and vanilla extract are a more expensive, prestigious, and higher quality ingredient, Walmart would not hide this under "Natural Flavors" in the ingredients.  *Id.* at ¶46.  In all likelihood, the vanilla flavoring is like derived from wood pulp or rice bran and not actual vanilla.  *Id.* at ¶¶ 37-40.  Thus, Morris has plausibly pled that Walmart has violated 101.22(i) with its use of "Naturally Flavored," and Morris should survive, where *Lam's* claim failed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (concluding that a claim is "plausible on its face" only if "the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged").

Lastly, by arguing dismissal and relying on FDA Regulation 21 C.F.R. § 101.22(h)(1), Walmart misconstrues Morris' allegations. FDA Regulation 21 C.F.R. § 101.22(h)(1) only proscribes what the statement of ingredients must declare (using the definitions in § 101.22(a) which are purely definitional and not operative). 21 C.F.R. §101.22(h)(1)[1] does not expressly authorize (or address) the term "natural flavors" used outside the statement of ingredients. The basis of Morris' claim is not that Walmart violated 21 C.F.R. § 101.22(h)(1) by listing "Natural Flavors" in its Pediatric Shakes' list of ingredients. However, Morris contends that it is evidence that Walmart's Pediatric Shakes do not actually contain vanilla.

**B. <u>The Court Has Already Denied Walmart's Motion To Dismiss The Maltodextrin Claim And It Should Deny Its Second Attempt As Well.</u>**

Despite acknowledging that the Court already denied this argument, Walmart wrongly seeks to relitigate whether Morris has pled a cause of action predicated upon "maltodextrin [being] used as a synthetic sweetener." Dkt. No. 35, at pp. 3, 5-7. As this Court has previously stated, and as Walmart should be aware:

> The district court's analysis in *Ivie v. Kraft Foods Global, Incorporated*, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013), is instructive….The court reasoned that ***the FDA's inclusion of maltodextrin in the list of Generally Recognized as Safe ("GRAS")***

---

[1] 21 C.F.R. § 101.22(h)(1) states:
> (h) The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way:
>> (1) Spice, natural flavor, and artificial flavor may be declared as "spice", "natural flavor", or "artificial flavor", or any combination thereof, as the case may be.

> ***substances "do[es] not exclude the possibility that these ingredients*** 
> ***could be used in the drink mix at issue as [a] sweeting***…agent[], which 
> would require disclosure." *Ivie*, 2013 WL 685372, at *10…. ***The court*** 
> ***further found a question of fact as to whether maltodextrin was used*** 
> ***as a sweetener in this product…***

Dkt. No. 29, at pp. 9-10 (emphasis added).

Walmart's second attempt to argue that Morris' maltodextrin claims should be dismissed is directly contradicted by this Court's finding that a question of fact exists over this issue. Dkt. No. 29, at pp. 9-10.  Indeed, such arguments are "inappropriate for determination on a motion to dismiss." *See Ivie v. Kraft Foods Global, Inc.*, No. 12-cv-2554 RMW, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013) ("[T]he factual determinations of whether maltodextrin is used as a sweetener…in this particular product … are inappropriate for determination on a motion to dismiss.).

Morris reincorporates her prior briefing on this issue (Dkt. 22) but Morris also supplements as follows.  The FDA's list of Generally Recognized as Safe ("GRAS") substances recognizes that Maltodextrin "could be used in the drink mix at issue as [a] sweetening or flavoring agent[]."  Dkt. No. 29, at p. 9-10.  Moreover, this Court has previously agreed with "the *Ivie* court's conclusion that this definition does not preclude the possibility that Walmart used maltodextrin as a synthetic sweetener in its pediatric shakes, warranting disclosure."  *Id.*, at p. 10. Here, Morris has plausibly alleged that Walmart's Pediatric Shakes use maltodextrin as a sweetener.  Dkt. No.

33, at ¶¶ 23-34.

Walmart ignores Morris' allegation that "maltodextrin is an unnatural synthetic sweetener contained in the Shakes." *Id.* at ¶ 33. "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.,* 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).   Here, the parties dispute whether the maltodextrin present in the Pediatric Shakes functions as a sweetener. This, however, is a question of fact that cannot be decided as a matter of law at this stage of the case, and discovery will reveal whether the maltodextrin employed by Walmart functions as a sweetener. Therefore, Walmart's Maltodextrin-related arguments should be denied.

## C. <u>Morris Plausibly Alleges that Walmart's Claims Of "Balanced Nutrition to Help Kids Thrive" and "Nutrition to help kids grow" Are False and Misleading.</u>

Morris' Amended Complaint plausibly alleges that the advertising and packaging for the Pediatric Shakes are false and misleading because they are advertised as "Balanced Nutrition to Help Kids Thrive," and "Nutrition to help kids grow," when in fact they are mostly sugar and Maltodextrin, which only provide empty calories.   Walmart argues that Morris has failed to state a plausible claim based on these nutrition related allegations. Dkt. No. 35, at pp.7-11.   Here again, however, Walmart conveniently misconstrues Morris' allegations to justify

dismissal and ignores this Court's previous order.  Dkt. No. 29, at p. 16 ("Morris does not allege how the nutritional content is deficient or how the use of unnatural or synthetic ingredients prevents the shakes from providing the promised nutritional value.").

As required by the Court, Morris' Amended Complaint adds additional specific factual allegations, which Morris contends adequately address this Court's Order.  Dkt. No. 33, at ¶¶ 47-61.  Simply put, Morris' claim that Walmart's statements that its Pediatric Shakes support the growth and development of children is likely to deceptive to a reasonable consumer in light of the sugar and Maltodextrin (an artificial sweetener) content of these Pediatric Shakes.  *Id.*  Although some vitamins and minerals in the Pediatric Shakes might benefit children, a reasonable consumer can easily obtain the minerals from healthier products that do not contain empty calories imparted through high levels of sugar and Maltodextrin, which has a high glycemic index among other negative health benefits.  *Id.*, ¶¶ 52-53.

Ignoring this, Walmart contends that, at the very least, there is ambiguity because of the "balanced nutrition" language and, once there is ambiguity, it is, in essence, the duty of the consumer to look at the ingredient list on the back of the label to clarify any ambiguity.  Dkt. No. 35, at p. 8-9 (citing *In re 100% Grated Parmesan Cheese Marketing and Sales*, 275 F. Supp. 3d 910 (N.D. Ill. 2017)).  As an initial matter, it is not clear that that is the law, at least in Alabama, and Morris is

not aware of any case law in the 11th Circuit holding otherwise.  Moreover, even if this label is ambiguous, "the question of whether a reasonable consumer would likely be deceived is a factual dispute that cannot be resolved at the motion to dismiss stage.  *Rice-Sherman v. Big Heart Pet Brands, Inc.,* No. 19-cv-03613-WHO, 2020 U.S. Dist. LEXIS 46197, at *23 (N.D. Cal. Mar. 16, 2020) (citing *Vicuna v. Alexia Foods, Inc.*, No. C 11-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012)) ("Because the question whether a reasonable consumer would likely be deceived by the designation 'All Natural' is a factual dispute, the court finds that these claims cannot be resolved at this stage of the litigation.").  Thus, determination of whether "Balanced Nutrition to Help Kids Thrive" and "Nutrition to help kids grow" are deceptive is a factual issue inappropriate for resolution at this time.  *Rice-Sherman*, 2020 U.S. Dist. LEXIS at *23.

Even crediting Walmart's ambiguity argument, Walmart should not prevail at this juncture because, it is not readily apparent that the nutritional content section or ingredient list would be helpful — *i.e.*, it is not clear that a reasonable consumer would be able to determine whether Maltodextrin supports the growth and development of children, based on these two pieces of information alone.  Dkt. No. 33, at ¶¶ 64, 66-68, and 77.  Thus, the inclusion of an ingredient list does not warrant, at this 12(b)(6) juncture, judgment as a matter of law.

Walmart relies on *In Re 100% Grated Parmesan Cheese Mktg. and Sales* for

the proposition that its "Balanced Nutrition to Help Kids Thrive," and "Nutrition to help kids grow" are not deceptive, based on the Pediatric Shakes' Nutritional Facts section and ingredients list dispelling any ambiguity surrounding those statements. Dkt. No. 35, at p. 8-11 (citing 275 F. Supp. 3d 910 (N.D. Ill. 2017)). However, the *Williams v. Gerber Prods.* discussed in *100% Grated Parmesan Cheese* appears more applicable to the facts here. 275 F. Supp. 3d at 924 (citing 552 F.3d 934, 938 (9th Cir. 2008)). In *Williams*, the Ninth Circuit rejected that a reasonable consumer should review the Nutritional Facts section to determine the truth about a product's front-label claims:

> We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. . . . We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Williams*, 552 F.3d at 939. Like Morris in this case, the *Williams* plaintiffs were challenging deceptive marketing for products consumed toddlers and children. 552 F.3d at 936. Like the *Williams* defendant, in this case Walmart made "affirmative misrepresentations," *i.e.* nutrition supporting the growth and development of children being primarily provided by Maltodextrin and sugar, not ambiguous statements. 275 F. Supp. at 923. Moreover, the *100% Grated Parmesan Cheese*

also acknowledged that

> It bears mention that additional contextual factors in *Williams* weighed
> in favor of finding deception. As the Ninth Circuit noted, the plaintiffs
> there alleged that they "sought healthy snacks for their children (ages
> two and three)" and "trusted the Gerber name," and thus "the claim that
> [the product] is `just one of a variety of nutritious Gerber Graduates
> foods and juices that have been specifically designed to help toddlers
> grow up strong and healthy' adds to the potential
> deception." *Williams,* 552 F.3d at 936, 939.

275 F. Supp. At 924.  These same factors are present here. Dkt. No. 33, at ¶18.

Likewise, in *Red v. Kraft Foods, Inc.*, the plaintiffs challenged defendants'

"representations that Teddy Grahams products are a 'good source of Calcium, Iron

& Zinc to Help Support Kids' Growth and Development.'" 754 F. Supp. 2d 1137,

1144 (C.D. Cal. 2010). In its second amended complaint, the plaintiffs alleged that

> 73. **Misleading "support kids' growth and development" Claim:**
> Kraft misleads consumers into believing that Teddy Grahams products
> are healthy by stating that they "support kids' growth and
> development." These statements are deceptive in intent and nature: the
> product contains PHVO, which damages a child's development,
> including brain development, and implies that Teddy Grahams are
> healthy when in fact they contain a product that causes CHD, cancer,
> and diabetes.

> 74. Teddy Grahams does not "support kids' health and development"
> because it is composed primarily of highly-refined sugar and simple
> starches that are digested immediately into sugar. In fact, growth and
> development do not require such nutritionally empty sugar and refined
> starch, but protein and a mix of natural fats. If Teddy Grahams were
> made from graham flour rather than unbleached white flour, it would
> have a lower amount of simple starches and a higher content of natural
> wheat fat (including omega-3 fatty acids) and protein. Natural wheat fat
> and protein are found in the germ of the wheat, which is removed during
> the refining process from the unbleached white flour used in Teddy

Grahams,     but     not     removed     from     graham     flour.

75. The wheat germ Kraft removes from the flour used in Teddy Grahams contains a healthy quantity of folate, niacin, thiamin, vitamin B6, calcium, iron, magnesium, manganese, omega-3 fatty acids, phosphorous, potassium, selenium, vitamin E, and zinc. After removing these *fourteen* nutrients from the flour used in Teddy Grahams, Kraft then adds back just *three* of them: calcium, iron, and zinc. While such enrichment modestly improves an unwholesome, unhealthy product, it still leaves Teddy Grahams nutritionally unbalanced and unable to support growth and development.

*Red v. Kraft Foods, Inc.*, Case 2:10-cv-01028-GW, Dkt. No. 58, at ¶¶ 73-75 (C.D. Cal. Sept. 16, 2010). In separating out earlier "good source" claims, the *Kraft Foods* Court tentatively found that "(1) Plaintiff's have plausibly alleged that the representation that Teddy Grahams help support kids' growth and development is misleading, and (2) this claim is not preempted." 754 F. Supp. 2d at 1144 and fn. 3. Morris' Amended Complaint contains allegations substantially similar to those made in Kraft Foods. Dkt. No. 33, at ¶¶ 47-61. Thus, dismissal of these claims is not warranted.

## <u>CONCLUSION</u>

Based on the foregoing, Morris contends that Walmart's Motion to Dismiss (Dkt. No. 35) should be denied in its entirety, and Morris' claims predicated upon (1) "Naturally Flavored;" (2) "Balanced Nutrition to Help Kids Thrive;" (3) "No Synthetic Color, Flavor or Sweeteners;" and (4) "Nutrition to help kids grow" survive the Motion.

Respectfully submitted, this the 16th day of April, 2020.

> */s/ Taylor C. Bartlett*
> W. Lewis Garrison, Jr.
> wlgarrison@hgdlawfirm.com
> Taylor C. Bartlett (ASB-2365-A51B)
> taylor@hgdlawfirm.com
> Travis E. Lynch (ASB-7232-M20F)
> tlynch@hgdlawfirm.com
> HENINGER GARRISON DAVIS, LLC
> 2224 First Avenue North
> Birmingham, AL 35203
> Telephone: 205.326.3336
> Facsimile: 205-326-3332
>
> J. Stuart McAtee  (ASB-0868-T52J)
> ALEXANDER SHUNNARAH
> PERSONAL INJURY ATTORNEYS
> 3626 Clairmont Avenue S
> Birmingham, AL 35222
> (205) 983-8116 Office
> (205) 983-8416 Fax
> smcatee@asilpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to all counsel of record.

> */s/ Taylor C. Bartlett*
> Taylor C. Bartlett

14