FILED

2020 May-01  AM 11:39
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| KAYLAN MORRIS, on behalf of herself and all others similarly situated | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Civil Action No. 02:19-cv-00650-GMB ) |
| WALMART INC. f/k/a WAL-MART STORES, INC., | ) **OPPOSED** ) ) |
| Defendants. | ) |

## WALMART'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE CLASS ACTION AMENDED COMPLAINT

Defendant, Walmart Inc. ("Walmart"), respectfully submits this Reply in Further Support of Its Motion to Dismiss. As set forth in the Motion to Dismiss, Plaintiff's attempt to replead fails because the amended "natural flavors" claims are still preempted, and Plaintiff's remaining claims fail to plead a plausible cause of action.

## ARGUMENT

**I.    PLAINTIFF'S AMENDED CLAIMS PREDICATED ON THE "NATURALLY FLAVORED" LABEL ARE STILL PREEMPTED BY THE FDCA.**

Plaintiff claims that she is not seeking to subject Walmart to liability based on its decision to follow the FDA's guidelines and list the Shakes' natural flavorings as "natural flavors" in the ingredient list. Instead, she paradoxically claims that Walmart's use of the FDA-approved "natural flavors" in place of vanilla or vanilla

extract is evidence that the Vanilla Shakes are not naturally flavored. This argument, however, is a distinction without a difference.

Plaintiff's only alleged "evidence" showing that Walmart's Vanilla Shakes are not naturally flavored is that the ingredient list includes "natural flavors" instead of vanilla or vanilla extract. In other words, Plaintiff's claim is based solely on the fact that the Vanilla Shakes comply with 21 C.F.R. § 101.22(h)(1), which specifically allows the ingredient list to include natural flavors as "natural flavors." Plaintiff speculates that Walmart would not "hide" such an "expensive" and "prestigious" ingredient under "Natural Flavors," even though that is exactly what the FDA regulations allow. Plaintiff's unfounded speculation seeks to "impose a requirement on Walmart that is inconsistent" with the FDA's regulations, which the Court previously found warranted preemption. Doc. 29, p. 8.

Thus, under the same rationale that the Court applied in its previous opinion, Plaintiff's amended claims predicated on the "Naturally Flavored" label are preempted and due to be dismissed.

## II.    PLAINTIFF'S CLAIM THAT MALTODEXTRIN IS USED AS A SWEETENER IS NOT PLAUSIBLE AS IT IS WHOLLY CONCLUSORY.

Contrary to Plaintiff's argument, the Court has never addressed whether the Amended Complaint plausibly alleges that maltodextrin is used as an artificial sweetener in the Shakes. First, the Court previously addressed only the issue of whether the claim was preempted. Second, the Amended Complaint added new and

different allegations regarding the Shakes' use of maltodextrin that make the claim's implausibility clear.

Plaintiff's Opposition argues that there is a "question of fact" because she alleged "maltodextrin is an unnatural synthetic sweetener contained in the Shakes." Doc. 36, p. 8. Plaintiff's allegation, however, is the prototypical conclusory assertion that the Eleventh Circuit has determined is insufficient and should be discarded. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (stating that, in applying *Iqbal* and *Twombly*, a court is to begin its analysis "by disregarding . . . wholly conclusory . . . allegations."). According to the Amended Complaint's new allegations, maltodextrin "can" in certain instances contribute to sweetness, while in other instances it does not. Doc. 33, ¶ 56. Plaintiff, however, provides no basis for the allegation that the maltodextrin used in the Shakes is of the type that "can" contribute to sweetness versus the type of maltodextrin that does not contribute to sweetness.

Instead, Plaintiff's allegations mirror those the Supreme Court dismissed in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In *Twombly*, plaintiffs brought claims under Section 1 of the Sherman act, which requires plaintiffs to show a "conspiracy" between market participants to engage in anticompetitive activities. In the complaint, the *Twombly* plaintiffs set forth numerous allegations of "parallel conduct" between the market participants, which can evidence an illegal conspiracy

but can also evidence legal independent actions. *Id.* at 556-57.  The Court ultimately found "that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice," to state a plausible claim for relief. *Id.*

The Supreme Court's logic in *Twombly* compels dismissal here. First, Plaintiff has alleged that Maltodextrin "can" act as a sweetener, just as "parallel conduct" can evidence an illegal conspiracy. But, just like parallel conduct does not necessarily evidence an illegal conspiracy, the presence of maltodextrin in the Shakes does not necessarily evidence the presence of an artificial sweetener. Additionally, as in *Twombly*, the "obvious alternative explanation," is that the maltodextrin in the Shakes is not being used as a sweetener, given that the Shakes already contain the sweeteners sugar and stevia.[1] *Twombly*, 550 U.S. at 567. Consequently, as the *Twombly* Court found "a bare assertion of conspiracy" did not state a plausible claim for relief, this Court should reject Plaintiff's conclusory allegation that "maltodextrin is an unnatural synthetic sweetener contained in the Shakes."

## III.   THE SHAKES CONTAIN "BALANCED NUTRITION TO HELP KIDS THRIVE" AND "NUTRITION TO HELP KIDS GROW."

Plaintiff's claims related to these statements essentially boil down to the allegation that the Shakes are not healthy because they contain maltodextrin and sugar. Doc. 36, p. 9 ("a reasonable consumer can obtain the minerals from healthier

---

[1] Doc. 33, ¶¶ 14 and 16.

products."). Plaintiff, however, conveniently ignores the fact that her claims are not based on the words "health" or "healthy" appearing on the Shakes' label. As a result, the relative healthiness or unhealthiness of sugar and maltodextrin is irrelevant. The only relevant question is: do the shakes contain "balanced nutrition," and "nutrition to help kids grow"? The answer to this question is unequivocally yes. Plaintiff does not even address, much less dispute, the fact that the Shakes contain roughly equal percentages of the recommended daily values for the three primary macronutrients (12% of fat, 12% of carbohydrates, and 14% of protein). Clearly consuming a balanced source of these macronutrients, in addition to the Shakes' vitamins and minerals, will provide nutrition to help kids grow. Given that the face of the Complaint demonstrates the truth of the alleged misrepresentations, Plaintiff's nutrition claims fail.

Furthermore, Plaintiff's Opposition fails to even address, much less distinguish, Alabama's well-established proposition that in order to reasonably rely on an alleged misrepresentation a plaintiff has a '"general duty . . . to read the document received in connection with a particular transaction,' together with a duty to inquire and investigate." *AmerUS Life Ins. Co. v. Smith*, 5 So. 3d 1200, 1208 (Ala. 2008) (quoting *Foremost Ins. Co. v. Putnam*, 693 So. 2d 409, 421 (Ala. 1997)). This is in accord with the holding in *In re 100% Grated Parmesan Cheese Marketing and Sales*, which found that "Where a plaintiff contends that certain aspects of a

product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous; if so, context can cure the ambiguity and defeat the claim . . . ." 275 F. Supp. 3d 910, 922 (N.D. Ill. 2017).

Here, according to the Complaint, had Plaintiff reviewed the label she would have been put on notice that the Shakes contained maltodextrin, sugar, and 10 grams of added sugars, which form the sole basis for Plaintiff's nutrition related claims. Plaintiff's reliance on *Williams v. Gerber Products Co.* and *Red v. Kraft Foods, Inc.*, is misplaced. Both *Williams* and *Red* were governed by California law which requires Plaintiff to "'show that members of the public are likely to be deceived.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). Alabama law, however, makes clear that there can be no deception where a reading of the entire document would have revealed the alleged misrepresentation. As a result, Plaintiff's nutrition claims fail because, as recognized in the Amended Complaint, the Shake's label fully discloses its ingredients and nutrition information making any alleged reliance unreasonable. *AmerUS Life Ins. Co.*, 5 So. 3d at 1208.

## CONCLUSION

Each of Plaintiff's allegations fail as a matter of law because they ignore controlling administrative regulations and basic pleading standards. As such,

Plaintiff's entire Amended Complaint is due to be dismissed for failure to state a claim.

Respectfully Submitted,

*s/ Cole R. Gresham*
Cole R. Gresham (ASB-8993-L47G)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, Seventh Floor
Birmingham, Alabama  35209
(205) 868-6000 Phone
(205) 868-6099 Facsimile
*cgresham@starneslaw.com*

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to the following:

W. Lewis Garrison, Jr.
Taylor C. Bartlett
Heninger Garrison Davis, LLC
2224 First Ave North
Birmingham, AL 35203
lewis@hgdlawfirm.com
taylor@hgdlawfirm.com

J. Stuart McAtee
Alexander Shunnarah
Personal Injury Attorneys
3626 Clairmont Ave South
Birmingham, AL 35222
smcatee@asilpc.com

Taylor A. Pruett
Schreiber Law Firm, P.C.
2129 First Ave North
Birmingham, AL 35203
taylor@schreiber.law

*s/ Cole R. Gresham*
Cole R. Gresham