UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KAYLAN MORRIS, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 2:19-cv-650-GMB |
| WALMART INC., | ) ) |
| Defendant. | ) ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pending before the court is Defendant's Motion to Dismiss the Class Action Amended Complaint. Doc. 35.  In the operative complaint, Plaintiff Kaylan Morris asserts a claim under the Magnuson-Moss Warranty Act and state-law claims of unjust enrichment, breach of express warranty, breach of implied warranty, and a violation of the Alabama Deceptive Trade Practices Act against Defendant Walmart Inc. ("Walmart"). Doc. 33.  After careful consideration of the parties' filings and the relevant law, and for the reasons stated below, the court concludes that the motion to dismiss is due to be granted in part and denied in part.

**I. JURISDICTION AND VENUE**

The court has subject-matter jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. § 1332.  The parties do not contest personal jurisdiction or that venue is proper in the Northern District of Alabama.  The court finds adequate

allegations to support both.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts that follow are those alleged in the amended complaint. Walmart sells a product described as a "Parent's Choice Pediatric Shake," which it markets to mothers or expectant mothers. Doc. 33 at 3−4. The labeling on the shakes indicates that they are "Naturally Flavored," contain a "Balanced Nutrition to Help Kids Thrive" and "Nutrition to help kids grow," and have "No Synthetic Color, Flavor or Sweeteners." Doc. 33 at 4.

Two shakes are at issue here—the chocolate flavored shake and the vanilla flavored shake. The listed ingredients of the chocolate shakes are

> Water, Maltodextrin, Sugar, Milk Protein Concentrate, High Oleic Safflower Oil, Canola Oil, Cocoa (processed with Alkali), Soy Protein Isolate, Short-Chain Fructooligosaccharides (FOS), Cellulose Gel, Natural Flavors, Soy Lecithin, Fish Oil (DHA), Salt, Potassium Hydroxide, Monk Fruit, Stevia.

Doc. 33 at 5. The listed vitamins and minerals are

> Choline Bitartrate, Dimagnesium Phosphate, Tricalcium Phosphate, Potassium Chloride, Magnesium Chloride, Ferrous Sulfate, Zinc Sulfate, DL-Alpha-Tocopherol Acetate (Vitamin E), D-Calcium Pantothenate (Vitamin B5), Niacinamide (Vitamin B3), Thiamine Hydrochloride (Vitamin B1), Manganese Sulfate, Pyridoxine Hydrochloride (Vitamin B6), Riboflavin (Vitamin B2), Copper Sulfate, Vitamin A Palmitate, Folic Acid, Chromium Chloride, Biotin, Potassium Iodine, Phytonadione (Vitamin K1), Sodium Molybdenum, Cholecalciferol (Vitamin D3), Cyanocobalamin (Vitamin B12), Dicalcium Phosphate, Potassium Phosphate, Potassium Citrate, Potassium Chloride, Sodium Ascorbate.

Doc. 33 at 5–6.  The listed ingredients of the vanilla shakes are

> Water, Maltodextrin, Sugar, Milk Protein Concentrate, High Oleic Safflower Oil, Canola Oil, Cellulose Gel, Soy Protein Isolate, Short-Chain Fructooligosaccharides (FOS), Natural Flavors, Soy Lecithin, Fish Oil (DHA), Carrageenan, Salt, Potassium Hydroxide, Monk Fruit, Stevia.

Doc. 33 at 4–5.  The listed vitamins and minerals are

> Choline Bitartrate, Dimagnesium Phosphate, Tricalcium Phosphate, Potassium Chloride, Magnesium Chloride, Ferrous Sulfate, Zinc Sulfate, dl-Alpha-Tocopheryl Acetate (Vitamin E), D-Calcium Pantothenate (Vitamin B5), Niacinamide (Vitamin B3), Thiamine Hydrochloride (Vitamin B1), Manganese Sulfate, Pyridoxine Hydrochloride (Vitamin B6), Riboflavin (Vitamin B2), Copper Sulfate, Vitamin A Palmitate, Folic Acid, Chromium Chloride, Biotin, Potassium Iodide, Phytonadione (Vitamin K1), Sodium Molybdenum, Cholecalciferol (Vitamin D3), Cyanocobalamin (Vitamin B12), Dicalcium Phosphate, Potassium Phosphate, Potassium Citrate, Potassium Chloride, Sodium Ascorbate.

Doc. 33 at 5.

In both shakes, maltodextrin and sugar are the most abundant ingredients other than water. Doc. 33 at 12.  Maltodextrin does not provide any nutritional value apart from being a carbohydrate. Doc. 33 at 12.  And maltodextrin has a high glycemic index, causing a rapid spike in blood sugar. Doc. 33 at 12.  Blood sugar spikes can lead to excessive caloric intake or decreased caloric expenditure. Doc. 33 at 12.  Over time, this cycle can result in weight gain and Type 2 diabetes. Doc. 33 at 12.

Depending on the manufacturing process, maltodextrin can be composed of

varying amounts of monosaccharides and disaccharides. Doc. 33 at 13. Maltodextrins containing 8% to 9% of monosaccharides and disaccharides contribute to sweetness. Doc. 33 at 14. The FDA does not consider maltodextrin to be an added sugar for labelling purposes unless it has been purposefully manufactured for a sweetening effect. Doc. 33 at 13.

One ingredient missing from the vanilla shakes is "real vanilla." Natural vanilla flavor is derived from the seed pods of vanilla. Doc. 33 at 10. Growing the seed pods is a labor-intensive process, making real vanilla expensive. Doc. 33 at 10. As a result, most vanilla flavoring is produced synthetically. Doc. 33 at 10. Walmart's vanilla shakes claim to be "naturally flavored" even though the ingredients do not include vanilla, vanilla beans, vanilla extract, or any other natural flavor ingredient derived from vanilla. Doc. 33 at 11. The characterizing flavor in the vanilla shakes is not derived from real vanilla. Doc. 33 at 11. The chocolate shakes, on the other hand, contain cocoa. Doc. 33 at 11.

Concerned about the diet and nutrition of her son, who is a picky eater, Morris purchased the shakes for her child in Walmart retail stores located in Jefferson County, Alabama. Doc. 33 at 16. Based on the promises Walmart made on the bottles, Morris purchased the vanilla and chocolate shakes for her son to supplement his diet, help him grow, and provide a balanced nutrition. Doc. 33 at 16. Morris would not have purchased the shakes had she known that they contained synthetic

and artificial ingredients, that they did not provide a balanced nutrition that would help kids grow, and that the vanilla shake did not contain vanilla flavoring derived from actual vanilla. Doc. 33 at 17. The shakes did not provide the nutrients her son needed and instead incorporated significant sweeteners and sugars. Doc. 33 at 17. As a result of Walmart's material misrepresentations, Morris brings this class action lawsuit on behalf of customers who purchased the shakes during the statute of limitations period. Doc. 33 at 18.

### III.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level,"

*Twombly*, 550 U.S. at 555, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

## IV.  DISCUSSION

Morris alleges that the labels "Naturally Flavored," "No Synthetic Color, Flavor, or Sweeteners," "Balanced Nutrition to Help Kids Thrive," and "Nutrition to help kids grow," are untrue, misleading, and likely to deceive reasonable customers principally because the shakes contain unnatural and synthetic ingredients and have a high sugar content with many empty calories. Doc. 33 at 6.  Based on these allegations, Morris brings claims for breach of express warranty, breach of implied warranty, unjust enrichment, violation of the Magnuson-Moss Warranty Act, and violation of the Alabama Deceptive Trade Practices Act.  Walmart moves to dismiss these claims, arguing that they either are preempted by federal regulations or not sufficiently pled. Doc. 35.  The court addresses each argument in turn.

**A.     The "Naturally Flavored" Label**

Morris' claims centered around the "Naturally Flavored" label have been amended such that they now survive the motion to dismiss.  In its order addressed to the original complaint, the court found that these claims were due for dismissal while permitting Morris to seek leave to amend. Doc. 29 at 8.  Morris accepted the court's invitation, but Walmart maintains that all claims based on the label "Naturally Flavored" are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA")

even considering the amended complaint's new formulation of those claims. Doc. 35 at 3. The court disagrees.

As discussed in the court's order resolving the previous motion to dismiss, the preemption question here boils down to whether the complaint plausibly alleges that the shakes "contain[] natural flavor which is derived from the characterizing food ingredient." *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1101 (N.D. Cal. 2012) (internal citation and quotation marks omitted). The amended complaint does, in fact, recite in conclusory fashion that the "Naturally Flavored" label is untrue and misleading because the "Vanilla Shakes' characterizing flavor of vanilla is not derived from the characterizing ingredients of vanilla." Doc. 33 at 6. But the devil is in the detail, and after careful consideration the court finds that the factual allegations of the amended complaint support the reasonable inference that Walmart's usage of the "Naturally Flavored" label is inconsistent with the relevant federal regulations. For this reason, the amended complaint plausibly alleges that the shakes do not meet the baseline requirements set by the United States Food and Drug Administration ("FDA") for "Natural Flavored" labeling.

By way of supporting facts, the amended complaint alleges that the "'Naturally Flavored'" [label] is understood by consumers to mean that the Shakes contain natural flavor derived from Vanilla." Doc. 33 at 11. This fact is not, in and of itself, directly relevant to the issues before the court. But the complaint explains

7

that the shakes' flavor is not derived from the characterizing ingredient of vanilla because the shakes "contain unnatural and synthetic ingredients" instead of "actual Vanilla." Doc. 33 at 6 & 17.  The complaint notes that the vanilla shakes "do not list vanilla, vanilla beans, vanilla extract, or any other natural flavor ingredient derived from Vanilla on its list of ingredients." Doc. 33 at 11.  The complaint further characterizes Walmart's listing of "Natural Flavors" in the shakes' ingredient list as an admission that the shakes' characterizing flavor of vanilla is not derived from "real vanilla." Doc. 33 at 11.

These allegations are sufficient to defeat Walmart's preemption argument in as much as they make clear that Morris is claiming that Walmart violated FDA regulations in its labeling of the vanilla shakes—not that Walmart should be held to another, inconsistent labeling standard.  This clarification brings the instant claims outside of the scope of *Lam*.  In fact, in *Lam*, 859 F. Supp. 2d. at 1102, the court was careful to note that "crux of the [claims] is that the Fruit Snacks' labeling is deceptive because the products' ingredients, not their flavors, are unnatural."  To put a finer point on this distinction, the court observed that "[i]f Lam means to assert that the Fruit Snacks violate 21 C.F.R. § 101.22(i) or 21 U.S.C. § 343(k) because their flavors are artificial, then she must allege as much in her complaint.  She has not.  Accordingly, her claims concerning the flavoring labels are preempted by the FDCA." *Id.* at 1103.

Morris, on the other hand, has alleged that the vanilla flavoring Walmart uses in its shakes does not consist of natural flavors derived from vanilla, and she has supported this allegation with facts from which this inference may be drawn. While the applicable regulation, 21 C.F.R. § 101.22(i), allows the pediatric shakes to be labelled as "Naturally Flavored" even though they do not contain actual vanilla, it does not allow for the shakes to use that label unless they contain "natural flavor which is derived from" vanilla. *Id.* at 1102–03. This may seem like a distinction without a difference, but it is the distinction baked into the law. The task for Morris going forward will be to marshal evidence tending to prove that the components identified only as "Natural Flavors" on the shakes' labeling do not include any natural flavors derived from vanilla within the meaning of the FDCA. At this stage of the litigation, however, Morris has sufficiently pled her claim that Walmart is misleading consumers with its "Naturally Flavored" labeling.

**B.     The "No Synthetic Color, Flavor, or Sweeteners" Label**

Morris' claims based on the "No Synthetic Color, Flavor, or Sweeteners" label also survive the motion to dismiss. Morris sufficiently pleads that this label is untrue and misleading by alleging that the shakes contain maltodextrin and that maltodextrin is an unnatural, synthetic sweetener. Doc. 33 at 9.

Walmart argues that the amended complaint does not plausibly allege that the maltodextrin contained in the shakes is used for sweetening purposes. Doc. 35 at 7.

The amended complaint, however, includes the allegation that the label "No Synthetic Color, Flavor, or Sweeteners" is untrue "because the Shakes contain unnatural and synthetic ingredients such as maltodextrin." Doc. 33 at 6. The complaint further alleges that "Maltodextrin is a Sweetener that is Not Natural but rather is Synthetic." Doc. 33 at 7. Maltodextrin is "a sweetener because it contains sugars, similar to corn syrup." Doc. 33 at 7. "Thus, maltodextrin is an unnatural synthetic sweetener contained in the Shakes which is directly contrary to the Shakes' labelling." Doc. 33 at 7.

Morris' complaint explains that maltodextrins are ingredients with a Dextrose Equivalent ("DE") of less than 20, while corn syrups have a DE of 20 or higher, according to federal regulations. Doc. 33 at 13. The amended complaint alleges that "[d]epending on the manufacturing process, different maltodextrin[s] will have different DE and different amounts of mono- and disaccharides." Doc. 33 at 13. The complaint explains that maltodextrins are considered to be an added sugar for labelling purposes if they are purposefully manufactured for a sweetening effect or have a high DE. Doc. 33 at 13. If maltodextrin has a lower DE and is added as a starch, it does not qualify as an added sugar for labelling purposes. Doc. 33 at 13. The complaint alleges that Walmart's shakes contain ten grams of added sugar. Doc. 33 at 12. In conclusion, the complaint alleges that "maltodextrin is an unnatural synthetic sweetener . . . directly contrary to the Shakes' labelling." Doc. 33 at 9.

Walmart contends that these allegations "provide[] no basis for the [claim] that the maltodextrin used in the Shakes is of the type that 'can' contribute to sweetness versus the type of maltodextrin that does not contribute to sweetness." Doc. 35 at 6. While it is true that the complaint does not explicitly state that the maltodextrin in the shakes is the type of maltodextrin that contributes to sweetness, the complaint contains factual content allowing the reasonable inferences that Walmart uses maltodextrin in the shakes for sweetening purposes and that the maltodextrin in the shakes has a high DE. Specifically, the amended complaint alleges that maltodextrin can be used as synthetic sweetener if it is purposefully manufactured for a sweetening effect and has a high DE. Doc. 33 at 13. It also alleges that the shakes contain ten grams of added sugar, and that the maltodextrin in the shakes is "an unnatural synthetic sweetener contained in the Shakes which is directly contrary to the Shakes' labelling." Doc. 33 at 7. With these allegations, Morris has provided enough factual material for the court to connect the dots. Drawing on the court's experience and common sense, the court finds that the amended complaint states a plausible claim for relief as to this label. As with her claims related to the "Naturally Flavored" label, Morris may have a hard row to hoe in proving that the maltodextrin in the shakes should have been labelled as a synthetic sweetener. Even so, she has sufficiently alleged that the "No Synthetic Color, Flavor, or Sweeteners" label is untrue and misleading such that her claims

11

invoking this label survive the motion to dismiss.

## C. The "Balanced Nutrition to Help Kids Thrive" and "Nutrition to help kids grow" Labels

The claims stemming from the "Balanced Nutrition to Help Kids Thrive" and "Nutrition to help kids grow" labels are due to be dismissed. Here, the amended complaint lacks the factual content to support the bare assertion that the labels "Balanced Nutrition to Help Kids Thrive" and "Nutrition to help kids grow" are false and misleading.

The complaint does not claim that the shakes are completely devoid of nutritional value, which would render the labels false and misleading. Nor does the complaint explain in any detail how the shakes fail to provide balanced nutrition or nutrition to help kids grow. Instead, the complaint alleges that the shakes include a large quantity of empty calories and sugar, rendering them unable to "accomplish the[] goals" of "Balanced Nutrition to Help Kids Thrive" and "Nutrition to help kids grow." Doc. 33 at 14. As Morris acknowledges in her response to the motion to dismiss, however, large amounts of sugar and empty calories do not necessarily prevent the shakes from providing vitamins and minerals to help children thrive and grow. *See* Doc. 36 at 9 ("Although some vitamins and minerals in the Pediatric Shakes might benefit children, a reasonable consumer can easily obtain the minerals from healthier products that do not contain empty calories imparted through high levels of sugar and Maltodextrin, which has a glycemic index among other negative

health benefits."). The relevant question is not whether the shakes are the healthiest delivery mechanism for the vitamins and minerals they contain. And the shakes' labels do not promise a low sugar content. Morris' claim that the shakes contain unhealthy ingredients in addition to vitamins and minerals is insufficient to show that Walmart's amorphous[1] nutrition labels are misleading. Without more specific allegations and robust factual content, the court cannot find that Morris has stated a plausible claim for relief. Accordingly, her claims based on the labels "Balanced Nutrition to Help Kids Thrive" and "Nutrition to help kids grow" must be dismissed. Because Morris has already been given an opportunity to amend these claims, the dismissal will be with prejudice.

## V. CONCLUSION

For these reasons, it is ORDERED that the Motion to Dismiss (Doc. 35) is GRANTED in part and DENIED in part, as follows:

1. The Motion to Dismiss is DENIED as to Morris' claims predicated on the labels "Naturally Flavored" and "No Synthetic Color, Flavor, or Sweeteners."

2. The Motion to Dismiss is GRANTED as to Morris' claims predicated on the labels "Balanced Nutrition to Help Kids Thrive" and "Nutrition to Help Kids

---

[1] Walmart's advertisements of "balanced nutrition" share some of the qualities of the "generalized, vague, nonquantifiable statements" defined as non-actionable "puffery" in the securities fraud context, *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019), further undercutting Morris' attempt to state a claim related to these labels.

13

Grow," and these claims are DISMISSED with prejudice.

3. Morris shall file a second amended complaint consistent with this Memorandum Opinion and Order no later than **October 6, 2020,** and Walmart shall file its responsive pleading no later than **October 20, 2020.**

DONE and ORDERED on September 22, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE