FILED
2021 Oct-01  PM 09:06
U.S. DISTRICT COURT
N.D. OF ALABAMA


# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KAYLAN MORRIS, on behalf of herself and all others similarly situated** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **CIVIL ACTION NO.: 2:19-cv-650-GMB** |
| **WALMART, INC. f/k/a WAL-MART STORES, INC.,** | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| **Defendant.** | ) | |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION

1

**Table Contents**

I.  **Introduction** ................................................................................................1

II.  **The Factual Basis for Morris' Class Claims.** ..................................2

  A.  **Walmart's Pediatric Shakes.** ....................................................2

  B.  **Walmart's "Clean Label" Pediatric Shakes.** .............................3

    1.  **"No Synthetic Color, Flavor or Sweeteners"** ..........................3

    2.  **"Naturally Flavored"** .........................................................3

  C.  **The Pediatric Shakes Are the Same Across The Country.** .........4

III.  **The Class Definitions** ..................................................................5

IV.  **Legal Standards Governing Class Certification** ...........................6

V.  **The Requirements of Rules 23(a) Are Satisfied.** ..........................8

  A.  **Numerosity** ..............................................................................8

  B.  **Commonality** ........................................................................10

  C.  **Typicality** ..............................................................................12

  D.  **Adequacy of Representation** ...................................................14

VI.  **Rule 23(b)(2) Is Satisfied for the Alabama Classes.** ...................16

VII.  **The Rule 23(b)(3) Requirements are Satisfied.** ...........................17

  A.  **Common Questions of Law and Fact Predominate.** ..................18

    1.  **Common Issues Predominate for Plaintiff's Warranty Claims and Magnuson-Moss Claims.** .................................................19

    2.  **Common Issues Predominate for Plaintiff's ADPTA Claim For the Alabama Classes.** ..............................................................21

    3.  **Common Issues Regarding Damages.** ...................................24

  B.  **Class Treatment Is the Superior Method to Adjudicate These Claims.** .25

  C.  **The Class Is Manageable and Ascertainable.** ..........................27

IX.  **Conclusion** ................................................................................29

**Cases**

*Allapattah Servs., Inc., v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003), *reh'g en banc denied*, 362 F.3d 739 (11th Cir. 2004).........................................................24

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)......................................7, 26

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013)........... 8, 25

*Baez v. LTD Fin. Servs., L.P.*, 2016 WL 3189133 (M.D. Fla. June 8, 2016)..........15

*Braggs v. Dunn*, 317 F.R.D. 634 (M.D. Ala. 2016) ..................................................11

*Brown v. SCI Funeral Servs.. of Fla., Inc.*, 212 F.R.D. 602 (S.D. Fla. 2003)... 7, 10, 19

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796(7th Cir. 2013) .................................18

*Califano v. Yamasaki*, 442 U.S. 682 (1979) .............................................................8

*Carriuolo v. Gen. Motors Co.,* 2016 WL 2870025 (11th Cir. May 17, 2016)........10

*Carter v. L'Oréal USA, Inc.*, 2017 U.S. Dist. LEXIS 155232 (S.D. Ala. Sept. 21, 2017), *affirmed* (Oct. 6, 2017 – Granade J.)...........................................................22

*Cheney v. Cyberguard Corp.*, 213 F.R.D. 484 (S.D. Fla. 2003) ..............................10

*Cherry v. Domestic Corp.*,  986 F.3d 1302 (11th Cir. 2021)....................... 6, 27, 29

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ......................................................24

*Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986) ....................9

*CV Reit, Inc. v. Levy*, 144 F.R.D. 690 (S.D. Fla. 1992).............................................7

*Dapeer v. Neutrogena Corp.*, 2015 WL 10521637 (S.D. Fla. Dec. 1, 2015)..........27

*Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253 (D. Kan. 2010).............................18

*Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968), *rev'd on other grounds* 417 U.S. 156 (1974) .................................................................................................7

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985) .................................................7

*Esplin v. Hirschi,* 402 F.2d 94 (10th Cir. 1968), *cert. denied*, 394 U.S. 928 (1969) 7

*Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925 (11th Cir. 1983)..........................5

*Ex parte Miller*, 693 So. 2d 1372 (Ala. 1997) .........................................................19

*F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d. 595 (9th Cir. 1993)......................................22

*Griffin v. Carlin*, 755 F.2d 1516 (11th Cir. 1985) ..................................................14

*Herrera v. JFK Medical Center Limited Partnership*, 2016 WL 1637826 (11th Cir. April 26, 2016) ........................................................................................................24

*In re Checking Account Overdraft Litig.*, 307 F.R.D. 656 (S.D. Fla. 2015) ...........27

*In re International Harvester Co.*, 104 F.T.C. 949 (1984).......................................22

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)  19, 24

*In the Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984) .............................22

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001).................................18

*Jones v. Coty Inc.*, 362 F. Supp. 3d 1182  (S.D. Ala. 2018)....................................21

*Kamm v. California City Development Company*, 509 F.2d 205 (9th Cir. 1975)...26

*Kilgo v. Bownan Tranps., Inc.*, 789 F.2d 859 (11th Cir. 1986) ................................9

*Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987) ......................15

*Klay v. Humana, Inc.,* 382 F.3d 1241 (11th Cir. 2004) .......................... 7, 18, 25, 26

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984) ...... 13, 14

*Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015) .......21

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .........................................29

*McGregor v. Chierico*, 206 F.3d 1378 (11th Cir. 2000).....................................22

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) ..............................19

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ........................................7

*Phillips v. Hobby Lobby Stores, Inc.*, No. 2:16-cv-00837-JEO, 2019 U.S. Dist. LEXIS 229264 (N.D. Ala. Sep. 30, 2019) ...........................................22

*Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341 (11th Cir. 2001)...............................13

*Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000) ...................5

*Puhalla v. Mercedes-Benz USA, LLC* (*In re Takata Airbag Prods. Liab. Litig.*), 462 F. Supp. 3d 1304 (S.D. Fla. 2020)..............................................22

*Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872 (Ala. 2009).....................................19

*Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, (1st Cir. 2003) ..................7

*Southwest Sunsites, Inc. v. Federal Trade Comm'n.*, 785 F.2d 1431 (9th Cir. 1986) ........................................................................................22

*Sterling v. Velsicol Chemical Corp.* 855 F.2d 1188 (6th Cir. 1988) .......................26

*Tucker v. General Motors Corp.*, 769 So. 2d 895 (Ala. Civ. App. 1998) ...............20

*Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003) .... 14, 15

*Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996) ...............................13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................. 11, 17, 19

*Welch v. Theodorides-Bustle*, 273 F.R.D. 692 (N.D. Fla. 2010).........................9, 13

*Whitton v. Deffenbaugh Disposal, Inc.,* 2014 WL 11485715 (D. Kan. Oct. 28, 2014)......................................................................................25

*Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350 (11th Cir. 2009) ................. 13, 27

**MOTION AND MEMORANDUM OF LAW
IN SUPPORT OF CLASS CERTIFICATION**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Kaylan Morris ("Morris" or "Plaintiff") respectfully moves for class certification, for her to be appointed as Class Representative, and for Heninger Garrison Davis, LLC to be appointed as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g).

## I.   Introduction

Morris alleges that Defendant Walmart Inc., f/k/a Wal-Mart Stores, Inc. ("Walmart" or "Defendant") engaged in deceptive and unfair conduct in connection with its Vanilla and Chocolate Parent's Choice Pediatric Shakes (collectively "Pediatric Shakes").  (Doc. 42 at ¶2, 9-13).[1]  Walmart advertises its Pediatric Shakes as "Naturally Flavored" and containing "No Synthetic Color, Flavor or Sweeteners." (Doc. 42 at ¶12).  This, however, is a lie.  The Pediatric Shakes have no such properties, and the advertisement is used by Walmart to increase sales to health conscious parents without providing the promised benefits.   This conduct is deceptive and unfair and also breaches Walmart's express and/or implied warranty.

Morris asserts causes of action for violation of Alabama's Deceptive Trade Practices Act, § 8-19-1 *et seq*., Ala. Code 1975 ("ADTPA"), violation of the Magnusson-Moss Warranty Act, unjust enrichment, breach of express warranty, and

---

[1] References to "Doc. X at Y" cite to the record according to the ECF pagination, and references to "Doc. X at ¶Y" cite to specific paragraphs within the document.

breach of implied warranty. (Doc. 42 at ¶3).[2]

## II.   The Factual Basis for Morris' Class Claims.

### A.   Walmart's Pediatric Shakes.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[2] Plaintiff is not seeking class certification of her claims under Count I (unjust enrichment). Plaintiff is seeking to certify her Magnuson-Moss Warranty Act claim (Count II) in relation to her express warranty claim (Count III) and implied warranty claim (Count IV), and her ADTPA Claim (Count V) on behalf of the Alabama Classes.



**B.   Walmart's "Clean Label" Pediatric Shakes.**

These "Clean Label" Pediatric Shakes are misleading in at least two ways.

### 1.   "No Synthetic Color, Flavor or Sweeteners"

During the Class period, Walmart's Chocolate Parent's Choice Pediatric Shake and Vanilla Parent's Choice Pediatric Shake were advertised as containing "No Synthetic Color, Flavor or Sweetener."   (Ex. 2, Advertising Stipulation). However, Walmart's Pediatric Shakes are not sold as advertised and are contrary to their express labelling because they contain Maltodextrin, a synthetic sweetener.[4] *See* Ex. 3 (Vanilla Ingredients List and Chocolate Ingredients List).

### 2.   "Naturally Flavored"

At all times relevant to this lawsuit, Walmart's Vanilla Parent's Choice



[4] Doc. 42 at ¶¶ 23-34.

Pediatric Shake were advertised as "Naturally Flavored."  (Ex.2, Advertising Stipulation).  Walmart's Vanilla Pediatric Shakes' packaging and labeling indicate that the characterizing flavor is vanilla.  (Ex. 4, Vanilla Pediatric Shakes "Clean Label" Packaging; Ex. 3, Ingredient List).  However, on the list of ingredients, the Vanilla Shakes do not list vanilla, vanilla beans, vanilla extract, or any other natural flavor ingredient derived from Vanilla.

**C.     The Pediatric Shakes Are the Same Across The Country.**

████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

████████████████

## III.    The Class Definitions

Morris seeks certification of two classes under Federal Rule of Civil Procedure 23(a) and (b)(3) [5]:

<u>The Alabama Chocolate Parent's Choice Pediatric Shake Class</u> – All persons in Alabama who on or after February 1, 2018 purchased a Clean Label Chocolate Parent's Choice Pediatric Shake.

<u>The Alabama Vanilla Parent's Choice Pediatric Shake Class</u> – All persons in Alabama who on or after February 1, 2018 purchased a Clean Label Vanilla Parent's Choice Pediatric Shake.

Excluded from all Classes are:

(a) any person who purchased a Pediatric Shake for resale and not for personal or household use;

(b) any officers, directors or employees, or immediate family members of the officers, directors or employees, of Walmart or any entity in which a Walmart has a controlling interest;

(c) any legal counsel or employee of legal counsel for Walmart; and

(d) the presiding Judge in the Lawsuit, as well as the Judge's staff and their immediate family members.

The 11th Circuit has traditionally "collapsed class definition and ascertainability into one inquiry." *Cherry v. Domestic Corp.*,  986 F.3d 1302, 1302 (11th Cir. 2021) (citation omitted).  "A class is inadequately defined if it is defined

---

[5] Alternatively, Morris seeks certification of any class the Court orders as it is within the Court's discretion to alter the class definitions.  *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930-31 (11th Cir. 1983); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000).

through vague or subjective criteria." *Id.* "[A] district court must decide that a class is ascertainable before it may turn to the requirements of Rule 23(a)." *Id.* at 1303. As the 11th Circuit recently clarified in *Cherry*, "ascertainability precedents do not mandate proof of administrative feasibility. ***A class is 'clearly ascertainable' if we are certain that its membership is 'capable of being' determined."*** *Id.* (emphasis added). As discussed below, these definitions are "capable of being determined." They rely solely on objective criteria. ██████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ [6] *See supra*, § VII(C).

## IV.   Legal Standards Governing Class Certification

Courts have long recognized class actions as an essential device to resolve disputes involving similar factual or legal issues where "vindication of 'the rights of groups of people who individually would be without effective strength to bring their

---

[6] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

opponents into court at all.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (discussing the Advisory Committee Notes to Rule 23); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class actions give redress to those who "would have no realistic day in court if a class action were not available").

Given these important public policy interests, the requirements for class actions should be liberally construed. *See*, *e.g.*, *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 563 (2d Cir. 1968), *rev'd on other grounds* 417 U.S. 156 (1974) ("[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action."); *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir. 1968), *cert. denied*, 394 U.S. 928 (1969); *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985); *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 695 (S.D. Fla. 1992). "It is well-established that class actions are a particularly appropriate and desirable means of redressing common claims for uniform legal violations that affect large numbers of persons in the same way." *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 603 (S.D. Fla. 2003); *see also Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 4l-42 (1st Cir. 2003).

Class certification is a preliminary procedural issue and, while it involves a rigorous analysis of the Rule 23 requirements, the Court has broad discretion to certify a class. *Klay v. Humana, Inc.,* 382 F.3d 1241, 1251 (11th Cir. 2004); *Califano v. Yamasaki*, 442 U.S. 682 (1979). In doing so, the court does not determine whether

the plaintiff will prevail, and merits questions may be considered only to the extent "that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) (citation omitted). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 1194-95.

Here, the requirements of Rule 23(a) and 23(b)(3) are met, class certification is appropriate, and Morris will prove her own claims as well as those of all class members through the efficiency of a single trial and common evidence.

## V.     The Requirements of Rules 23(a) Are Satisfied.

Federal Rule of Civil Procedure 23(a) establishes that a class may be certified where "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Each of these elements is met here.

### A.     Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members be impracticable.  Although there is no magic number of class members above or below which the numerosity threshold has been satisfied, generally a putative class of 40 or more members is sufficient.  *Cox v. American Cast Iron Pipe*

*Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *Kilgo v. Bownan Tranps., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986).  Likewise, it is not necessary that a plaintiff allege the exact number or specific identity of proposed class members.  *Newburg on Class Actions* § 3:13 (5th ed. 2012).  Ultimately, "common sense is sufficient to determine that numerosity has been amply proven . . . ." *Welch v. Theodorides-Bustle*, 273 F.R.D. 692, 695 (N.D. Fla. 2010).

Here, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Here, joinder is impractical if not impossible, and numerosity is established.

## B.     Commonality

Rule 23(a)(2) requires that there be either questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  This is not a high threshold; not all questions need be common to all class members and a single common question will satisfy this requirement.  *See*, *e.g.*, *Carriuolo v. Gen. Motors Co.,* 2016 WL 2870025 at *3 (11th Cir. May 17, 2016); *Brown,* 212 F.R.D. at 604; *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) ("factual differences between class members do not preclude a finding of commonality, as long as common questions of law exist").  Commonality does not require that identical questions of law or fact are common to the class, only that the issue of liability is common.  *See, e.g., Coleman,* 141 F.R.D. at 521.



"What matters to class certification . . . [is] the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation and internal quotation marks omitted).  In short, commonality merely requires a showing that there is "some glue" holding the claims together.  *Id.* at 352.  For this showing, "even a single common question will do."  *Braggs v. Dunn*, 317 F.R.D. 634, 655 (M.D. Ala. 2016) (*quoting Dukes*, 564 U.S. at 359).

The claims in this lawsuit arise from a common course of conduct and a common set of circumstances: the class members all received the same warranty on the Pediatric Shakes, and Walmart breached its warranty to its customers in the same way.  Likewise, all Alabama class members were exposed to the same uniformly misleading and deceptive misrepresentations.  (Ex. 2, Stipulation).  The common questions to be resolved in this case include at least the following:

    (a)    Whether Walmart failed to comply with its warranties;

    (b)    Whether Walmart's conduct constitutes a breach of applicable warranties;

    (c)    Whether advertising the Shakes as being "Naturally Flavored" is false and/or deceptive;

    (d)    Whether advertising the Shake as having "No Synthetic Color, Flavor or Sweeteners" is false and/or deceptive;

    (e)    Whether Walmart has misrepresented facts about the Shakes;

    (f)    Whether Walmart's representation and omissions regarding the nature

of the Shakes constitute false and/or deceptive trade practices;

(g)     Whether Walmart's acts, omissions or misrepresentations of material facts violated Alabama's Deceptive Trade Practices Act;

(h)     Whether the Plaintiff and putative Class Members have suffered an ascertainable loss as a result of Walmart's acts, omissions or misrepresentations of material facts;

(i)     Whether the Plaintiff and putative Class Members are entitled to monetary damages and, if so, the amount of such relief; and

(j)     Whether the Plaintiff and putative Class Members are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

Not only are these questions common, they can be resolved through the application of common proof to determine liability for the Classes as a whole.  Each Class member is similarly situated.  Each purchaser of the Pediatric Shakes received the same warranty from Walmart.  ████████████████████████

████████████████████████████████████████████████████████

████████████████████████.  Proof of Walmart's liability will turn on a single, uniform warranty and on the application of Alabama law to Walmart's deceptive conduct in labeling, marketing, and advertising its Pediatric Shakes.

### C.     Typicality

Typicality focuses on the nature of the claims of the class representative, not the specific facts giving rise to those claims.  Fed. R. Civ. P. 23(a)(3).  While commonality refers to the shared characteristics of the class, typicality refers to the

class representative's claims in relation to the claims of the class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001). Where a class representative has the same interest and suffered the same injury as the absent class members, then typicality is satisfied. *Welch*, 273 F.R.D. at 695.

However, typicality does not require identical claims or interests, and a "factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009). The question is whether any factual differences are so great as to render the class representative's interests antagonistic to those of the class, "such that the interests of the class are placed in significant jeopardy." *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996).

Morris' claims are based on the same legal theory and same conduct as those of the putative class members. The relevant inquiry for both the warranty claims and the ADTPA claim focuses solely on Walmart's conduct. Morris, like the other putative class members, received the same warranty from Walmart, was subjected to the same practices, representations, and omissions as putative class members, and purchased the Pediatric Shakes just like all the other class members. *See* Section II, *supra*.

Additionally, Morris and each Class member were harmed in the same way. Walmart's common course of conduct effected Morris and each Class member in the exact same way: by purchasing these Pediatric Shakes based upon deceptive labeling and advertising of characteristic the Pediatric Shakes did not possess.  The only difference between Morris and putative Class members is in the amount, not type, of damages under the common remedial theory of recovery.  *See, e.g., Kornberg,* 74l F.2d at 1337 (differences in the amount of damages do not destroy typicality).

Because Morris and the Classes assert the same legal theories, and seek the same type of relief for the same injury, Morris' interests are materially identical to those of the Classes.  Typicality is met here.

### D.    Adequacy of Representation

The Eleventh Circuit has determined that "the adequate representation requirement involves questions of whether Plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and of whether plaintiffs have interest[s] antagonistic to those of the rest of the class." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985).  With respect to the adequacy of the class representative itself, the inquiry is whether the representative will adequately prosecute the action on behalf of the class.  *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).  Both requirements are met here.

First, no substantial conflict exists between Morris and the Classes.  Minor conflicts are not sufficient to defeat certification, and a conflict must be "fundamental," such as where absent class members economically benefit from the challenged conduct.  *See*, *e.g.*, *Valley Drug*, 350 F.3d at 1189.  Morris shares common interests and seeks common relief with all absent class members in this case. ██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████ and Ala. Code, 1975, § 8-19-10(a)(1)(". . . liable to each consumer or other person for: . . . Any actual damages sustained by such consumer or person, or the sum of $100, whichever is greater").  The central issues—Walmart's labeling and advertising of the Pediatric Shakes and whether they are deceptive or unlawful—are uniform among Morris and the Classes.  There is a common goal in remedying the unlawful conduct and, if Morris succeeds, the benefits will be shared by all Class members.

Second, Morris has and will continue to adequately prosecute this action. This inquiry "is not especially stringent." *Baez v. LTD Fin. Servs., L.P.*, 2016 WL 3189133, at *4 (M.D. Fla. June 8, 2016) (citing *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987)).  The class representative's knowledge of the case need not be "robust." *Newburg on Class Actions* § 3:67 (5th ed. 2012).

Morris has actively participated in every step of this litigation.  Morris has provided deposition testimony, responded to discovery requests, and produced numerous documents. Ex. 9 (Morris Depo.) and Ex. 11 (Discovery Responses). Morris' deposition shows that she is committed to pursuing this case and is knowledgeable and involved in the litigation. *See e.g.,* Ex. 9 (Morris Depo., 15:9-17; 16:2-10; 16:13-18).

Morris' counsel have extensive experience prosecuting class actions and other complex litigation (including litigation very similar to this case which was successfully resolved on a class basis).  Ex. 10 (HGD Firm Resume).  Morris' counsel have vigorously pursued this case since its inception—including by conducting extensive written and electronic discovery, by taking depositions of Walmart's Fed. R. Civ. P. 30(b)(6) witnesses, by serving third party discovery—and are dedicated to continuing to do so in the future.  Morris' counsel are unaware of any conflicts of interests that would render them inadequate to represent the putative Classes in this case and respectively submit that they will fairly and adequately protect the interests of the putative Classes.

## VI.   Rule 23(b)(2) Is Satisfied for the Alabama Classes.

"The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of

them." *Dukes*, 564 U.S. at 360.  Morris, on behalf of herself and the proposed classes, complains of deceptive practices that are generally applicable to the class members as a whole.

Morris requests the Court grant injunctive relief and enjoin Walmart from continuing to engage in false, misleading and/or deceptive acts or practices in the conduct of trade or commerce (i.*e., violating the ADTPA*); to-wit:

(1) Walmart shall cease selling the Pediatric Shakes as currently labeled and recall all current Pediatric Shakes on the market in the State of Alabama which contain Maltodextrin.

(2) Walmart shall also perform one or more of the following:

   a.  Remove the Pediatric Shakes from the consumer market in the State of Alabama altogether; or

   b.  Change the label and packaging of the Pediatric Shakes to remove "Naturally Flavored" and replace it with "Artificially Flavored;" or

   c.  Change the Ingredients of the Vanilla Pediatric Shakes to include natural flavor actually derived from vanilla; or

   d.  Remove "No Synthetic Color, Flavor or Sweeteners" from the label and packaging of the Pediatric Shakes"; or

   e.  Remove Maltodextrin from the Ingredients of the Vanilla Pediatric Shakes and the Chocolate Pediatric Shakes.

Since the ADTPA allows for injunctive/declaratory relief, and the requested injunctive and declaratory relief is indivisible and benefits all Class members, RULE 23(b)(2) certification is appropriate for the Alabama Classes.

## VII.    The Rule 23(b)(3) Requirements are Satisfied.

17

Morris seeks certification under Rule 23(b)(3) which provides that a class action is appropriate if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3). The predominance and superiority requirements of Rule 23(b)(3) are satisfied here.

## A.      Common Questions of Law and Fact Predominate.

Predominance is established where, as here, "there is a common nucleus of operative facts relevant to the dispute and those common questions represent a significant aspect of the case which can be resolved for all members of the class in a single adjudication." *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 261 (D. Kan. 2010).  "Common issues of fact and law predominate if they 'have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Klay*, 382 F.3d at 1255 (*quoting Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001)).

The importance—not just the number—of the common issues is relevant in making this determination as well.  *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("predominance requires a qualitative assessment too; it is not bean counting").  A single important issue "'central to the validity of each one of the claims' in a class action, if it can be resolved 'in one stroke,' can justify class

treatment." *Id*. (*quoting Dukes*, 563 U.S. at 338).   Predominance is inherently a comparative inquiry; it is not a matter of whether only common questions exist, but rather of whether there are common questions that are "more substantial" than individual issues. *Moore v. PaineWebber, Inc.*, 306 F.3d 1247,1252 (2d Cir. 2002); *see also*, *e.g.*, *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (the rule "calls only for predominance, not exclusivity, of common questions").

### 1. Common Issues Predominate for Plaintiff's Warranty Claims and Magnuson-Moss Claims.[9]

Under Alabama law, Walmart breached the warranty attached to these Pediatric Shakes.   In Alabama, express warranties are governed by Section 7-2-313(1)-(2) of the Alabama Code, which states that an express warranty is created by the seller based upon "any affirmation of fact or promise made to the buyer."   The crux of an express warranty claim is that "the goods did not conform to the warranty." *Ex parte Miller*, 693 So. 2d 1372, 1377 (Ala. 1997).   "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009).   Here, Walmart issued a warranty (a valid contract binding

---

[9] Although the Magnuson Moss Warranty Act is a federal law, it necessarily relies on underlying state law breach of warranty claims.  *See Brown v. Electrolux Home Prods., Inc*., 817 F.3d 1225, 1231 (11th Cir. 2016) ("[C]laims under the Magnuson-Moss Act are . . . based on state law.").

the parties) that is the same for Morris and all class members: the Pediatric Shakes would not contain "No Synthetic Color, Flavor or Sweetener" and be "Naturally Flavored." (Ex. 2, Stipulation). Morris and the Class members all completed performance in the same way: purchasing their Pediatric Shakes. (Ex. 5; Ex. 7; and Ex. 8). Walmart's Pediatric Shakes did not conform to this warranty between Walmart and Morris and all the other Class members because the Pediatric Shakes did not have the characteristics promised by Walmart. As a result, Morris and the Class Members were all damaged in the same way by buying goods that were not what they bargained for.

Likewise, under Alabama law, for goods to be merchantable, they must "conform to the promises or affirmations of fact made on the container or label if any." Ala. Code § 7-2-314(2) (1975).[10] To establish a claim of breach of the implied warranty of merchantability, a plaintiff must present evidence regarding (1) the existence of the implied warranty, (2) a breach of that warranty, and (3) damages proximately resulting from that breach. *Tucker v. General Motors Corp.*, 769 So. 2d 895, 901-902 (Ala. Civ. App. 1998). Here, whether the Pediatric Shakes contained "No Synthetic Color, Flavor or Sweetener" and were "Naturally Flavored" can be

---

[10] With respect to the implied warranty of merchantability, Morris maintains that the Pediatric Shakes also failed to (a) "pass without objection in the trade under the contract description", (d) "run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved", (e) be "adequately contained, packaged, and labeled as the agreement may. *See* Ala. Code § 7-2-314(2) (1975).

determined across the board because the formula for all the Pediatric Shakes was the same.

### 2.  Common Issues Predominate for Plaintiff's ADPTA Claim For the Alabama Classes.

Morris alleges that Walmart violated both the deceptive and unfair prongs of ADTPA. The Alabama legislature enacted the ALABAMA DECEPTIVE TRADE PRACTICES ACT 21 ("ADTPA") because "[t]he public health, welfare and interest require a strong and effective consumer protection program to protect the interest of both the consuming public and the legitimate businessperson." Ala. Code § 8-19-2 (1975). Section 8-19-3 provides the applicable definitions for reading and interpreting the ADTPA, while Section 8-19-5 decrees "[t]he following deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful:"

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have;

> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

> (27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

Ala. Code § 8-19-5 (1975).[11]  Although the ADTPA does not define the elements of

---

[11] Consumers may bring an ADTPA as a class action, even after its May 2016 amendment. *Jones v. Coty Inc.*, 362 F. Supp. 3d 1182, 1199-1200 (S.D. Ala. 2018) (citing *List v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015)); *Puhalla v. Mercedes-Benz USA, LLC* (*In re*

such an action, the claim looks to Section 5(a)(1) of the FEDERAL TRADE

COMMISSION ACT (15 U.S.C. 45(a)(1) for guidance. *See* Ala. Code §§ 8-19-1 and

-6, *et seq.* (1975).[12]   The Eleventh Circuit has rejected a requirement of proof of

individual reliance on misrepresentations under of the FEDERAL TRADE

COMMISSION ACT, which provides a remedy, specifically in the form of

injunctive relief, for consumers harmed by "unfair or deceptive acts or practices in

or affecting commerce."[13]   "A presumption of actual reliance arises once the [FTC]

has proved that the defendant made materials misrepresentations, that they were

widely disseminated, and that consumers purchased the defendant's product."

*McGregor v. Chierico*, 206 F.3d 1378, 1388 (11th Cir. 2000)).[14]   Consequently,

---

[12] *Takata Airbag Prods. Liab. Litig.*), 462 F. Supp. 3d 1304, 1321 n.7 (S.D. Fla. 2020); *Phillips v. Hobby Lobby Stores, Inc.*, No. 2:16-cv-00837-JEO, 2019 U.S. Dist. LEXIS 229264, at *13 (N.D. Ala. Sep. 30, 2019); *Carter v. L'Oréal USA, Inc*., 2017 U.S. Dist. LEXIS 155232 (S.D. Ala. Sept. 21, 2017), *affirmed* (Oct. 6, 2017 – Granade J.).

[12] According to federal decisions, a deceptive practice is one that is "likely to mislead" consumers. *See In re International Harvester Co*., 104 F.T.C. 949 (1984); *see also In the Matter of Cliffdale Assocs., Inc*., 103 F.T.C. 110 (1984); *Southwest Sunsites, Inc. v. Federal Trade Comm'n*., 785 F.2d 1431 (9th Cir. 1986). The injury to a consumer occurs at the instant of a seller's misrepresentations, which taint the consumer's subsequent purchasing decisions." *Fed. Trade Comm'n v. Bluehippo Funding, LLC*, 762 F.3d 238, 244 (2nd Cir. 2014) (citing *McGregor v. Chierico*, 206 F.3d 1378, 1388 (11th Cir. 2000) and joining its sister circuits by adopting the presumption that "consumer reliance [] attaches to potential consumers at the instant of the initial misrepresentation").

[13] Section 13 of the FTC ACT empowers the FTC to seek redress on behalf of injured consumers. 15 U.S.C. §§ 45(a), 52, and 53(b); *see also FTC v. Figgie Int'l, Inc.,* 994 F.2d 595, 605 (9th Cir.1993) (*per curiam*) ("Section 13 serves a public purpose by authorizing the Commission to seek redress on behalf of injured consumers.").

[14] *McGregor,* 206 F. 3d at 1388 (" . . . the FTC need not prove subjective reliance by each customer, as '[i]t would be virtually impossible for the FTC to offer such proof, and to require it would thwart and frustrate the public purposes of FTC action'" (quoting *Figgie*, 994 F.2d. 595 at 605-606); *see also Figgie*, at 603 ("Figgie would have us construe 'reasonable person would have known' to require actual knowledge. . . . Congress unambiguously referred the district court to the state of

under the ADTPA, a plaintiff must only establish three objective elements:

> (i)     they are a "consumer" who purchased "goods" "for personal, family or household use";
>
> (ii)    from a "person" [which is defined as including business entities], who advertised or offered to sale or distribute those "goods" in the State of Alabama;
>
> (iii)   that the "person" who advertised or offered to sale or distribute those "goods" in the State of Alabama actually knew or should have known, as a "reasonable person" under all the "surrounding circumstances" that in doing so, they had committed "one or more of the acts or practices declared unlawful under this chapter" (i.e., § 8-19-1, et seq.); and,
>
> (iv)    caused monetary damage to the "consumer".

Ala. Code §§ 8-19-3, -5, -10.

Once these elements are established, a consumer is entitled to the statutorily provided relief set forth in the ADTPA.  Here, a claim under the ADTPA does not require individualized proof. To the contrary, the proof necessary to substantiate these claims is the exact same for each Alabama class member and focuses squarely on the conduct of the Pediatric Shakes' packaging/labeling. Morris' allegations of deceptive conduct center on a common factual question—the misrepresentations of the packaging and labeling—and a common legal question—whether these misrepresentations are likely to deceive a reasonable consumer. Given the exact

---

mind of a hypothetical reasonable person, not the knowledge of the defendant. The standard is objective, not subjective. . . . The statute is unambiguous.").

same proof necessary to establish the Morris' and class member's claims, common issues clearly predominate over any individual issues.

### 3. Common Issues Regarding Damages.

"The presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs., Inc., v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *reh'g en banc denied*, 362 F.3d 739 (11th Cir. 2004). "Typically, even if courts must confront some individualized damages issues, common issues predominate if liability can be determined on a classwide basis." *Herrera v. JFK Medical Center Limited Partnership*, 2016 WL 1637826, *5 (11th Cir. April 26, 2016) (citing *Allapattah*, at 1261).[15]

The relief sought is pursuant to the ADTPA and is governed by the ADTPA. *See* Ala. Code § 8-19-2 (1975).  As the U.S. Supreme Court has opined, at the class certification stage, "any model supporting a plaintiff's damages case [is] consistent with its liability case." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Significantly, predominance under RULE 23(b)(3) requires only "a showing that questions common to the class predominate, ***not that those questions will be answered, on the merits***, in favor of the class." *Amgen*, 568 U.S. at 459 (2013)

---

[15] District courts have many tools to decide individual damages: "(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove  damages; (4) creating subclasses; or (5) altering or amending the class." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 14 (footnote omitted).

(emphasis added).  Here, common issues overwhelmingly predominate over any individual issues.

**B.     Class Treatment Is the Superior Method to Adjudicate These Claims.**

Class treatment of this action is inherently superior to other available methods of adjudication.  Superiority is a comparative inquiry that weighs the benefits of the class action mechanism against other available methods of fair and efficient adjudication.  *Newburg on Class Actions* § 4:64 (5th ed.).  It focuses "not on the convenience or burden of a class action suit per se, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."  *Klay*, 382 F.3d at 1269.  The Court may consider four factors in making this determination under Rule 23(b)(3).  Morris addresses each in turn.

First, Class members have little interest in pursuing separate actions.  The individual damages in this case (usually not exceeding a thousand dollars) are so small that the costs to litigate an individual's claims would be far greater than any damages they might recover.  *See Whitton v. Deffenbaugh Disposal, Inc.,* 2014 WL 11485715, at *7 (D. Kan. Oct. 28, 2014) (superiority exists where "the cost of legal representation alone outweighs the cost of disputing a $15 per month charge").  The evidence of Walmart's breach of warranty and deceptive conduct, by its very nature, has been uncovered only through extensive and costly discovery and as discovery

was primarily focused on class discovery, Doc. 14 at 3, additional merits discovery is required.  *See*, *e.g.*, *Amchem*, 521 U.S. at 617.

Second, Morris is unaware of any similar litigation already begun by or on behalf of the proposed Classes.  That no individual claims have been pursued to date speaks to the fact that this type of case can only successfully pursued by combining claims through the class action device.

Third, by concentrating all the Class members' claims in this forum, the Court will achieve a level of judicial economy and efficiency which cannot be obtained otherwise.  A class action will "achieve the economies of time, effort, and expense" by avoiding the expense and inefficiency of separate cases involving similar allegations.  *Sterling v. Velsicol Chemical Corp*. 855 F.2d 1188, 1196 (6th Cir. 1988); *see also Klay*, 382 F.3d at 1270.  By concentrating these claims in this forum, the Court reduces the risk of inconsistent adjudications and ensures a "uniformity of decision."  *Lewis v. National Football League*, 146 F.R.D. 5 (D.D.C. 1992); *see also Amchem,* 521 U.S. at 613-616; *Kamm v. California City Development Company*, 509 F.2d 205, 211 (9th Cir. 1975).

All four factors listed under Rule 23(b)(3), including manageability (discussed below), are met here.  Class treatment of this action is far superior to any alternative method of adjudication.  It is not only the best method of resolving the common issues that pervade this case, it is likely the only realistic method.

## C.   The Class Is Manageable and Ascertainable.

The proposed Classes are readily manageable and Class membership is easily ascertained.  Manageability is a comparative inquiry; the question is whether class treatment will create more management issues than the alternatives.  *Williams*, 568 F.3d at 1358.  Courts "deny class certification on manageability grounds relatively infrequently and primarily in certain carefully circumscribed situations."  *Newburg on Class Actions* § 4:72 (5th ed.); *Cherry*, 986 F.3d at 1304 ("manageability problems will rarely, if ever, be in themselves sufficient to prevent certification") (internal quotations omitted).

"If a district court reaches Rule 23(b), and the action involves a proposed Rule 23(b)(3) class, it may consider administrative feasibility as part of the manageability criterion of Rule 23(b)(3)(D)." *Cherry*, 986 F.3d at 1304. A class is ascertainable if membership turns on objective criteria that are administratively feasible to determine.  *Dapeer v. Neutrogena Corp.*, 2015 WL 10521637, at *7 (S.D. Fla. Dec. 1, 2015); *see also, In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 665 (S.D. Fla. 2015) (citation omitted)). Ascertainability is established where a proposed class "is adequately defined such that its membership is capable of being determined. . . . But membership can be capable of determination without being capable of ***convenient*** determination." *Cherry*, 986 F.3d at 1303 (emphasis in original).

The proposed classes satisfy the ascertainability requirement.  Here, the Class

definitions rely solely on objective criteria— 

The Class definitions are objective and Class members are identifiable using records maintained by Walmart. Liability for each class as a whole can be determined through the application of common evidence of Walmart's conduct to the same law. Damages can be determined through formulaic means from this data,



28

returning to each class member the monies paid by each. Therefore, the putative class is ascertainable because its "member is capable of being determined." *Cherry*, 986 F. Supp. at 1304.

## VIII.   Morris has Standing to Assert Claims on Behalf of the Classes.

Morris has standing to pursue its claims against Walmart. Standing is established by an actual injury, a causal connection between the injury and the conduct at issue, and the likelihood that the injury will be redressed by a successful result. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Here, Morris purchased both the Chocolate and Vanilla flavored Pediatric Shakes at issue, which provides both the injury and the causal connection between injury and conduct.[17] If Morris is successful in proving her claims at trial, the economic injury she and each Class member incurred in purchasing these Pediatric Shakes will be redressed, both for herself and for the Classes as a whole.

## IX.   Conclusion

This case presents the prototypical situation for class treatment. The uniform packaging and advertising and uniform conduct create a common nucleus of relevant facts for all class members. For the Alabama Classes, the application of shared evidence and effectively identical law to a uniform warranty will determine liability

---

[17] ████████████████████████████████████████

for the class as a whole.  In addition for the Alabama Classes' ADTPA claims, Walmart's uniform misrepresentations and omissions will determine liability for the Classes, as a whole.  Further, no significant manageability issues exist, and the Classes are ascertainable and readily identifiable.

The requirements of Rule 23(a) and 23(b)(3) are met for the Classes. Therefore, Morris respectfully requests that the Court certify each proposed Class, appoint undersigned counsel as class counsel under Rule 23(g), and allow Morris thirty days following certification to present the Court with a proposal for class notice.

DATED this 1st day of October 2021.

Respectfully Submitted,

*/s/ Taylor C. Bartlett*
Taylor C. Bartlett (ASB-2365-A51B)
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, Alabama 35203
Phone: 205.326.3336
taylor@hgdlawfirm.com

Travis E. Lynch (ASB-7232-M20F)
Heninger Garrison Davis, LLC
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
T: (404) 996-0867
F: (205) 547-5515
tlynch@hgdlawfirm.com

J. Stuart McAtee (ASB-0868-T52J)
ALEXANDER SHUNNARAH PERSONAL
INJURY ATTORNEYS
3626 Clairmont Avenue South
Birmingham, Alabama 35222
Phone: 205.983.8116
smcatee@asilpc.com

## CERTIFICATE OF SERVICE

I certify that on October 1, 2021, I filed the foregoing using the CM/ECF

system that will send electronic notice of such filing to all counsel of record.

*/s/ Taylor C. Bartlett*
Attorney for Plaintiff

31